STATE MUTUAL LIFE ASSURANCE COMPANY OF WORCESTER, MASSACHUSETTS, Appellant,

v.

Sam Adams DORSEY et al., Appellees.

STATE MUTUAL LIFE ASSURANCE COMPANY OF WORCESTER, MASSACHUSETTS, Appellant,

v.

The CITIZENS & SOUTHERN NATIONAL BANK, Executor of the Estate of David J. Murphy, Appellee.

Nos. 22480, 22481.

United States Court of Appeals
Fifth Circuit.

March 15, 1966.

T. M. Smith, Harold C. McKenzie, Jr., Atlanta, Ga., Troutman, Sams, Schroder & Lockerman, Atlanta, Ga., of counsel, for appellant.

B. D. Murphy, James N. Frazer, Atlanta, Ga., Watkins & Daniell, Atlanta, Ga., Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., of counsel, for appellees.

Before GEWIN and BELL, Circuit Judges, and HUGHES, District Judge.

GRIFFIN B. BELL, Circuit Judge.

These appeals, consolidated by the parties for briefing and argument and by the court for decision, arise out of diversity suits brought to recover death benefits under accident insurance policies. The

suits are identical except as to the amounts involved.

Roby Robinson, the insured decedent in No. 22,480 and David J. Murphy, the insured decedent in No. 22,481, were killed on June 3, 1962 while passengers on a Boeing 707 Intercontinental Jet Aircraft of Compagnie Nationale Air France when it crashed while attempting to take off from Orly Field, Paris, France. State Mutual had issued group accident contracts to insurance trusts in which the employers of the respective decedents were participants, and certificates of insurance had been issued to the decedents. State Mutual denied coverage on the basis of the following exclusion contained in the insurance certificates:

"No benefits shall be payable for any loss which is caused or contributed to by * * * being in or on or in contact with any kind of aircraft, either on the ground, water, or in the air, or falling or in any other manner descending with or from such aircraft, except loss resulting from flight or travel as a passenger in a licensed aircraft (other than a chartered aircraft) operated by a licensed pilot on a scheduled passenger service regularly offered between specified airports by a passenger carrier duly licensed by the proper licensing authority * * *".

The issues were narrowed in the District Court by State Mutual to a reliance on only two provisions of the exclusion: that the aircraft on which the decedents met their deaths was a chartered aircraft; and that it was not being operated in scheduled passenger service regularly offered between specified airports. Both of these issues were resolved against State Mutual and summary judgment was entered for the plaintiff in each case. Dorsey v. State Mutual Life Assurance Company of Worcester, Mass., N.D.Ga., 1964, 238 F.Supp. 391.[1] These same issues are the basis of the appeals to this court.

The Atlanta Art Association entered into two contracts with Air France for the transportation of a group of its members from Atlanta to Paris and return via New York. One covered the flight from Atlanta to Paris and the other covered the return trip. The contracts referred variously to the contemplated flights as charter flights or charter transportation. It was necessary for Air France to have the contracts and flights approved by the Civil Aeronautics Board and the same terminology was used. There was no reference at any time to a "chartered aircraft." The nearest reference is the CAB tariff filed by Air France which is entitled "A Passenger Charter Tariff * * * applicable to the Charter of Aircraft for the air transportation of persons and property * * *" but the applicable text of the tariff again is related only to charter flights.

The passenger seats were preempted under the contracts by the Art Association. Air France and its crew remained in control of such aircrafts as were to be employed in the flights, and also the cargo space. A separate ticket was issued to each passenger. The contract relating to the ill-fated return trip called for a flight on June 3, 1962 from Paris, France to Atlanta, Georgia on Air France Flight AF 007. This was a regularly scheduled Air France flight which left Paris on Sundays, Tuesdays, and Thursdays for New York and Houston. It was to be diverted in New York on this day for Atlanta and thence to Houston for return flight to New York and Paris. These are the facts as the District Court found them. They are amply supported in the record and thus are not clearly erroneous. Rule 52(a), F.R.Civ.P.

We must apply the pertinent principles of law to these facts in determining the validity of the appeals. It is un-

---

[1.] The opinion of the District Court in No. 22,481, The Citizens & Southern National Bank, Executor of the Estate of David J. Murphy v. State Mutual Life Assurance Company of Worcester, Mass., is un-

reported. It is dated December 16, 1964 and was filed on December 17, 1964 and adopts the opinion in *Dorsey* by reference.

disputed that Messrs. Robinson and Murphy met their deaths by reason of an accident and State Mutual asserts the exclusion in bar of recovery. The burden is on the insurer in such event to show that the deaths fall within the contract exclusion. Darby v. Interstate Life & Accident Insurance Company, 1963, 107 Ga.App. 409, 130 S.E.2d 360; Loftin v. United States Fire Insurance Co., 1962, 106 Ga.App. 287, 127 S.E.2d 53; Jewelers Mutual Insurance Co. v. Balogh, 5 Cir., 1959, 272 F.2d 889.

■ We first consider the contention that the aircraft in question was not in scheduled passenger service regularly offered between specified airports at the time of the crash. It is clear that the holding of the District Court to the contrary was correct. Whether the charter flight from Atlanta to Paris was just that and not a regular scheduled flight or passenger service regularly offered between specified airports misses the point. The same is true as to that portion of the return flight which was to have been between New York and Atlanta. It is, of course, undisputed that Air France did not maintain a regularly scheduled passenger service between New York and Atlanta or between Paris and Atlanta. The controlling fact is that the contract called for the return flight from Paris to Atlanta on Air France Flight AF 007. This was a scheduled passenger service regularly offered between Paris and New York and the crash was on this portion of the flight. It was the regular flight to New York. It was to depart from the schedule in New York and fly to Atlanta rather than directly to Houston. Each passenger was traveling on an Air France ticket. The members of the Art Association simply preempted the seats on the flight. This was the flight arrangement made by Air France. The facts fully warranted the conclusion reached by the District Court that no exclusion from coverage was made out on this ground.

State Mutual also asserted the "chartered aircraft" portion of the exclusion as a bar to recovery. It is to be noted that the exclusion does not say "charter flight" or "charter transportation". The District Court, relying on a maritime law principle, was of the opinion that the flight contracts under consideration were contracts of affreightment rather than the charter of an aircraft. Cf. United States v. Hvoslef, 1915, 237 U.S. 1, 35 S.Ct. 459, 59 L.Ed. 813; Leary v. United States, 1872, 14 Wall. 607, 81 U.S. 607, 20 L.Ed. 756. This conclusion was reached only after the court first determined that an ambiguity existed under the circumstances of these cases as to the meaning of the term "chartered aircraft" as used in the language of the exclusion. The evidence demonstrated a charter flight or charter transportation. Passenger space was chartered. There was no evidence that any specific aircraft was chartered. Air France was to remain in control and command of the aircraft, supply the crew, pay all expenses, choose the route, and the cargo space was retained.

■ We agree that the term was ambiguous. This being so, and if the ambiguous language can be construed in two ways, then the interpretation which is most favorable to the insured must be placed upon it. Massachusetts Benefit Life Association v. Robinson, 1898, 104 Ga. 256, 30 S.E. 918, 42 L.R.A. 261; John Hancock Mutual Life Insurance Co. v. Frazer, 1942, 194 Ga. 201, 20 S.E.2d 915; Wolverine Insurance Co. v. Jack Jordan, Inc., 1957, 213 Ga. 299, 99 S.E. 2d 95; Continental Casualty Company v. Robertson, 5 Cir., 1957, 245 F.2d 604.

■ A reasonable construction of "chartered aircraft" as the term was used here is that a specific aircraft was to be hired and placed in the custody and control of the charterer. This view is buttressed by the other language of the exclusion, above discussed, which provides coverage only when the loss is sustained on " * * * scheduled passenger service regularly offered between specified airports * *, *." This language would appear to be directed at charter flights as distinguished from flights on a chartered aircraft. This is in fact State Mutual's

position under their first contention here. It is not unreasonable in the light of the ambiguity to treat these separate provisions of the exclusionary clause as relating to separate activities; one to travel on a chartered aircraft; the other to travel on a charter flight.

█ The decision of the District Court that the decedents were not on a chartered aircraft when they met their death is sustained in this case and must stand. In our view they met their death on a charter flight which was at the time in scheduled passenger service regularly offered between specified airports. Their estates were due to recover. The judgments are affirmed.