Ernest **BRICKLEY**

v.

**OFFSHORE SHIPYARD, INC.,** and unknown barge, her engines, tackle, furniture and apparel; and the Fidelity and Casualty Insurance Company of New York.

Civ. A. No. 67–275.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 24, 1967.

William A. Summers, III, Garrett & Carl, New Orleans, La., for plaintiff.

A. D. Freeman, Jr., Morphy, Freeman & Batt, New Orleans, La., for Offshore Shipyard, Inc.

Margot Mazeau, David R. Normann, Normann & Normann, New Orleans, La., for Fidelity & Casualty Ins. Co. of New York.

HEEBE, District Judge:

The plaintiff in this case, Ernest Brickley, has sued Offshore Shipyard, Inc., his former employer and owner *pro hac vice* of the unknown barge cited in the caption, as well as Fidelity & Casualty Insurance Company of New York, Off-shore's insurer, for damages for personal injuries sustained aboard Offshore's vessel. The complaint is styled a civil action; plaintiff alleges in Count 4 of the complaint that he "was employed as a seaman aboard the aforesaid vessel, was more or less permanently attached to same, and contributed to the overall mission of the vessel," and bases his cause of action on the Jones Act, as well as on the warranty of seaworthiness and the general maritime law of negligence. Fidelity has moved for a summary judgment adjudicating the plaintiff's claim against Fidelity in Fidelity's favor on the ground that the policies issued by Fidelity to Offshore Shipyard by their express terms do not cover the incident sued upon. The only questions for our consideration are whether or not there are any issues of material fact concerning the issue of coverage and, if there are no issues of material fact in dispute, whether or not the policies in question provide coverage for the incident sued upon.

Fidelity, on the date of the accident, had in force two policies of insurance with Offshore Shipyard, one entitled "Comprehensive General Liability Policy" and the other entitled "Workmen's Compensation and Employer's Liability Policy." The plaintiff stipulates in his memorandum to the Court that there is no coverage in this case under the first policy. The plaintiff, however, claims that there is coverage under the policy entitled "Workmen's Compensation and Employer's Liability Policy." That policy contains two basic coverages:

"Coverage A—Workmen's Compensation"

"Coverage B—Employer's Liability"

Since the accident, the plaintiff has been collecting compensation under the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., from Fidelity as provided in Coverage A of the policy and supplemental riders thereto; in his present petition, however, he takes the position that he is a seaman and therefore entitled to damages under the Jones Act and the war-

ranty of seaworthiness apart from the Longshoremen's & Harbor Workers' Compensation Act. In addition, we read the complaint to allege that, should the plaintiff be found not to have been a seaman, in the alternative plaintiff is entitled to recovery of damages on the basis of unseaworthiness as a longshoreman, within the doctrine of Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) and Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). In any case, although plaintiff has been collecting compensation under Coverage A, he is now attempting to collect damages under Coverage B. Coverage B provides that the insurer obligates himself:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease * * * sustained * * * by any employee of the insured arising out of and in the course of his employment by the insured * * *."

For purposes of the present motion it is undisputed that the plaintiff was an employee of the insured, Offshore, that the accident and injury sued upon was sustained by the plaintiff during the course of his employment with Offshore and that the injury arose out of said employment. Were Coverage B the only provision of the policy at issue here, it is clear that there would be coverage for the accident and injury sued upon. However, the insurer points to two exclusionary provisions of the policy, the first of which reads as follows:

> "It is agreed that the policy does not apply to injury, including death resulting therefrom, sustained by: (1) a master or a member of the crew of any vessel * * *."

█ If the plaintiff here were a seaman, as he alleges in his complaint, we would feel bound to grant the motion for summary judgment for lack of coverage, since the very definition of seaman is "a member of the crew of any vessel." Both parties, the plaintiff as well as the insurance company, seem to have overlooked this plain meaning of the words of the policy. Fidelity took the position at the hearing of the motion that there could be no recovery by the plaintiff, that there was no coverage under the policy for the accident sued upon, by reason of the fact that the wording of Coverage B impliedly restricted Coverage B to accidents to employees and suits by them for damages where the employee sues on a theory grounded in his employee relationship with the insured, and that the present suit brought under the Jones Act and for unseaworthiness (the only grounds for suit by this plaintiff which are not prohibited by the Longshoremen's & Harbor Workers' Compensation Act) were causes of action in no way related to the employer-employee relationship, but rather to the relationship between plaintiff and Offshore created by Offshore's status as a shipowner, and that therefore Coverage B has no application to the present suit. We must reject this interpretation of Coverage B. As the plaintiff points out, the words of the policy provide without ambiguity that the insurer is obligated "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * injury * * * sustained * * * by any employee of the insured arising out of and in the course of his employment by the insured * * *." Coverage under that wording encompasses any accident sustained by an employee of the insured which arose out of and in the course of his employment. The legal theory under which such an employee might institute suit is totally irrelevant under the terms of the policy. The only requirement for coverage is that the injury be sustained by the employee during his employment. We cannot read the words "arising out of and in the course of" to imply that the legal theory under which a suit may be brought by an employee must "arise out of" the employment relationship. Such an interpretation of the words of the policy simply has no reasonable basis.

■■ We might well be justified in dismissing the motion for summary judgment simply on the basis of the disagreement of the parties as to the meaning of this wording of the policy. See American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co., 354 F.2d 214 (4th Cir. 1965); but we refrain from doing so for the reason that Fidelity's interpretation of Coverage B has no reasonable basis whatever. See St. Paul Mercury Insurance Co. v. Huitt, 336 F.2d 37, 41 (6th Cir. 1965). As stated in the *Huitt* decision (citing Couch on Insurance, 2nd, § 15.3):

> "* * * the construction and effect of a written contract of insurance is a matter of law * * * where there is no occasion to resort to extrinsic evidence for the purpose of resolving ambiguities."

We find the rationale of the *Huitt* case especially appealing where, although a party may assert and argue the existence of an ambiguity, none in fact exists and there is but a single reasonable interpretation of the wording possible. Moreover, we are mindful that this case involves the construction of a policy of insurance, and were there any real and substantial ambiguity in the present policy, that ambiguity would, as a matter of law, have to be construed against the insurance company. See Canal Ins. Co. v. Brooks, 201 F.Supp. 124 (W.D.La. 1962), aff'd 5 Cir., 309 F.2d 751; State Mutual Life Assurance Co. of Worcester, Mass. v. Dorsey, 357 F.2d 600 (5th Cir. 1956).

■ It seems that Fidelity has attempted to circumvent the more realistic point in their favor, that is, the express wording of the endorsement previously quoted. Under the contract the parties thereto have agreed simply that "the policy does not apply to injury, including death resulting therefrom, sustained by: (1) a master or a member of the crew of any vessel * * *." Should it be established that the plaintiff is a "member of the crew of any vessel," as he alleges in the alternative in Count 4 of his complaint, we would find the mo-

tion for summary judgment well taken. Just as the plain wording of Coverage B provides for coverage of accidents sustained by an employee during the course of his employment, regardless of the legal theory on which such an employee might choose to sue, likewise, the plain wording of the exclusion quoted excluding "members of the crew of any vessel" from coverage applies to such persons, regardless of the legal theory they might be suing on. The plaintiff contends that he sues on the basis of the unseaworthy condition of the vessel under the Reed v. The Yaka decision, and as a longshoreman rather than as a seaman. Nevertheless, we think the true status of the plaintiff—as a seaman, a longshoreman, or in whatever other status he may have—is the only matter pertinent to a determination of the application of the endorsement quoted. Merely because an injured party sues on a theory available to longshoremen as well as seamen, and even alleges himself to be a longshoreman rather than a seaman, cannot alter the true status of the party if he is in fact a seaman. The express terms of the policy exclude from coverage "members of the crew of any vessel," and the determination of whether or not an employee in fact fits that classification is the only pertinent consideration under that provision. Fidelity's remedy in this connection, if it wishes to pursue it, would be to establish by adequate evidence the status of the plaintiff as a seaman rather than a longshoreman, and if that status is not disputed by the plaintiff, summary judgment for Fidelity could be granted.

■ A second exclusionary provision is raised by the insurer. Exclusion F of the policy states:

> "This policy does not apply:
>
> "F. Under Coverage B, to any obligation to which the insured or any carrier, as his insured, may be held liable under the Workmen's Compensation or Occupational Disease Law of a state."

A rider to the policy brought the plaintiff's accident within the ambit of Coverage A of the policy for purposes of the

Longshoremen's & Harbor Workers' Compensation Act and thus within the alleged exclusion from Coverage B raised by Exclusion F. Fidelity contends that any accident which would give rise to recovery under workmen's compensation acts (including the Longshoremen's & Harbor Workers' Compensation Act) is not covered under Coverage B of the policy in view of Exclusion F. Again, we deem the insurer's interpretation untenable. The plain meaning of the words of this exclusion is simply to say that Coverage B does not include Coverage A. Assuming that a company took out a policy with Fidelity and bought only Coverage B, that company would not be insured, and could not be reimbursed, for any payments made under the Longshoremen's & Harbor Workers' Compensation Act. We find no reasonable basis to hold that the words of Exclusion F are intended to remove from coverage a claim for damages by an injured employee merely because that employee might also have a claim for compensation. Moreover, in this particular case, the plaintiff, although he has been collecting compensation payments from the insurer, has not sued either Offshore or Fidelity for payments under the Longshoremen's & Harbor Workers' Compensation Act, or any compensation act; and we are aware of no prior judicial determination of liability on the part of Fidelity or Offshore to this plaintiff under any compensation act. Certainly Fidelity cannot escape the plain meaning of the wording of Exclusion F merely by making voluntary compensation payments to an injured empolyee; if that were so, there would be no practical meaning whatsoever to Coverage B itself. As stated above, we do not think that the mere fact of a disagreement of the parties as to the meaning of the wording of this contract of insurance creates any dispute as to a material fact in this case, and we deny the motion of Fidelity for summary judgment, not by reason of any such dispute, but because the unequivocal meaning of the words of the contract is not that which it suggests.

For the foregoing reasons, the motion of the Fidelity and Casualty Insurance Company of New York for summary judgment is hereby denied without prejudice to mover to reurge the motion when and if it becomes appropriate to do so at a later date.