Marcos GARCIA, Plaintiff-Appellant,

v.

The QUEEN, LTD., and Fidelity and Casualty Company of New York, et al.,
Defendants-Appellees.

No. 73-2025

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 13, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Thomas M. Carney, William M. Alper, Miami, Fla., for plaintiff-appellant.

Frank A. Lane, Miami, Fla., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

We review a final judgment below denying relief to the plaintiff-appellant, Marcos Garcia, in his suit for damages against his employer, The Queen, Ltd., and his employer's two insurers. The district court concluded, inter alia, that, as a matter of law, an insurance policy labelled as a workmen's compensation policy issued by one insurer to the appellant's employer did not provide coverage for damages where as here the relief sought was by a maritime remedy. For reasons which we explicate below, we reach the view that the insurance coverage under that policy was broader than determined under the district court's theory of coverage. We reverse as to this issue.

### THE FACTS

Garcia was employed as an able-bodied seaman by The Queen, Ltd., a Delaware corporation which had purchased the S/S QUEEN ELIZABETH (The Queen). It was planned to convert the ship into a hotel and restaurant. At the time that the appellant's alleged injuries occurred, The Queen was lying at dockside in Port Everglades, Florida, pending completion of a permanent berth for her at that port. On December 17, 1969, appellant was engaged, pursuant to orders given by his superiors, in hoisting a steam generating machine from dockside to the deck of The Queen by means of lifeboat davits. In the course of this endeavor, the steam generating machine moved suddenly, apparently causing the plaintiff to fall and receive bodily injury.

### THE TRIAL

Appellant filed suit in the court below against his employer, The Queen, Ltd., and the employer's two insurers, Fidelity and Casualty Company of New York (Fidelity) and The United Kingdom Mutual Steamhip Assurance Association, Ltd (Bermuda).[1] Damages were sought under the Jones Act, 46 U.S.C. Sec. 688, for unseaworthiness of the vessel, and for maintenance and cure. Fidelity was sued on the basis of a policy entitled "Workmen's Compensation and Employer's Liability Policy" issued by it to The Queen, Ltd. and in force at the time of appellant's accident. The specific provision of the policy under which relief was sought, Part B, bound the insurer to pay:

> "[A]ll sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident * * * sustained . . . by any employee of the insured arising out of and in the course of his employment by the insured * * *."

Fidelity denied liability for appellant's claim on grounds: (i) that the policy was a workmen's compensation policy and was not designed or sold to cover maritime injuries to maritime employees, and (ii) that the appellant was not a seaman and therefore not entitled

---

1. Service of process on the latter company was quashed upon the grounds that it was not doing business in the State of Florida. The suit proceeded thereafter against the two remaining defendants, The Queen. Ltd. and Fidelity. Bermuda is not involved in this appeal.

to proceed under the maritime theories advanced by him as a basis for his action.[2]

■ As discovery and other pre-trial procedures progressed, counsel for both parties found themselves unable to agree whether Part B of the Fidelity workmen's compensation policy afforded coverage where damages were sought under maritime theories of recovery.[3] Accordingly, the trial judge ordered that "the issue of insurance coverage be tried before the issue of liability and damages." For this purpose, plaintiff's counsel waived his right, previously claimed, to trial by jury on the issue of

insurance coverage[4] and trial—supposedly limited to the one issue—was held before the district court sitting without a jury on December 4, 1972.

■ At trial, orders and stipulations as to its limited nature notwithstanding, evidence was introduced concerning the ultimate question of Fidelity's liability under the policy issued to The Queen, Ltd., and the district judge in his opinion entered findings of fact and conclusions of law concerning both coverage and liability.[5] The judge concluded as a matter of law: (i) that Part B of the workmen's compensation policy did not afford coverage for the appel-

---

2. It is interesting to note that Fidelity had initiated voluntary compensation payments to appellant after his injury, but later discontinued those payments on the ground that the appellant *was* a seaman and therefore not covered under the policy. However, at the time payments were discontinued, Fidelity allegedly thought that the appellant was employed by the Cunard Lines and not by its insured, The Queen, Ltd. The basis for this assumption is unclear from the record.

3. In his motion for a preliminary pre-trial conference, plaintiff's counsel indicated the existence of this problem. (R 224). At a later date, in a reply memorandum in support of his motion for partial summary judgment, plaintiff's counsel urged that the threshold question to be decided in the case was:

> Whether Coverage B—Employer's Liability is applicable to any judgment obtained in this cause . . .. As counsel have advised the Court, there is every possibility that once this insurance problem is determined, this claim can be settled. In fact, serious settlement discussions were temporarily suspended to permit this issue to be judicially determined.

4. In point of fact, the construction of the insurance policy was strictly a matter of law for the court to decide and not a matter on which the plaintiff had a right to a jury trial. United Services Automobile Ass'n v. Porras, Fla.App.1968, 214 So.2d 749.

5. The gradual broadening of the inquiry beyond the bounds of the question of coverage is easily documented. In his motion for summary judgment, appellant's counsel addressed himself solely to the question of whether coverage obtained under Part B of the workmen's compensation policy where recovery was sought on the basis of mari-

time remedies. The Queen, Ltd.'s counsel by his reply memorandum, nonetheless moved beyond the question of mere coverage and addressed himself to issues bearing entirely upon the question of ultimate liability, e. g. whether the appellant was a seaman and whether The Queen was a vessel (see note 6, infra.) in navigation. By his reply memorandum, Garcia's counsel responded on the issue of appellant's status as seaman-non-seaman, but still focused his attention to the question of insurance coverage: "The parties . . . are seeking a determination whether Coverage B—Employers' Liability is applicable to any judgment obtained in this cause."

In appellant's final memorandum prior to trial, the question of coverage appears in the main to have become submerged in the question of ultimate liability. The memorandum states: "The ultimate issue which divides the parties is whether The Queen Elizabeth was a vessel . . . ." (R 385). Plaintiff's counsel thereupon cited authority for the proposition that the boat was a vessel. (R 385–88). The reply memorandum of The Queen, Ltd.'s counsel concerned itself entirely with The Queen's status as vessel or land structure.

At trial, both sides introduced testimony and evidence going to the question of ultimate liability. This was in spite of the statement by appellant's counsel at the opening to the trial that:

> By agreement of counsel and the approval of the Court, what we are doing here to-day is trying *separately*, non-jury, waiving the jury for this issue, the question of insurance coverage in the case Garcia v. The Queen, Ltd.

We conclude that both counsel and the court below were undecided regarding the issues to be tried, notwithstanding the *force* of statements such as the one cited above.

lant's injuries; (ii) that The Queen was not a ship but a land structure; (iii) that The Queen was not in navigation at the time of the alleged injury; and (iv) that the appellant was not a seaman at the time of the alleged injury.[6]

Before considering the trial court's conclusions on insurance coverage, we must determine whether its departure from its self-imposed limits on the scope of the trial constituted an abuse of discretion on the part of the trial judge in violation of constitutional principles.

## TRIAL BY JURY OR BY THE COURT?

■ Trial by jury is a right guaranteed to parties in suits at law by the Seventh Amendment to the Constitution. The guarantee is reiterated in the Federal Rules of Civil Procedure, Rule 38(a), which requires that "[t]he right of trial by jury . . . shall be preserved * * * inviolate."

Plaintiff's counsel in the instant case, both in the original and amended complaints demanded the right to a jury trial on all issues triable of right by a jury. The issues determinative of liability, whether The Queen was in navigation at the time of the alleged injury, and the issue of damages were issues of fact properly for a jury to decide.[7] The procedure below deprived the appellant of his right to a jury trial on the issues of liability and damages. In the circumstances of this case, the district judge abused his discretion in reaching the issues of liability apart from that of coverage under the insurance policy in question.[8] Accordingly, we vacate the

6. These findings were determinative of the question of liability given the maritime theories under which the appellant was proceeding in the court below. Recovery under (i) the Jones Act, (ii) for unseaworthiness, or (iii) for maintenance and cure, depended in each instance upon the appellant's demonstrating that he was a seaman at the time of the alleged injury. In order to prove seaman status he was required to prove (i) that the vessel aboard which the alleged injury occurred was *in navigation* at the time that the alleged injury occurred; (ii) that the appellant was aboard the vessel primarily as an aid to navigation; and (iii) that his connection with the vessel was more or less permanent. McKie v. Diamond Marine Co., 5 Cir. 1953, 204 F.2d 132, 136. Of course, failing proof of status as a seaman, appellant could recover for unseaworthiness upon a showing that he was a *Yaka-Sieracki* seaman, a harbor worker performing tasks aboard ship normally performed by seamen under the doctrine of Reed v. S/S YAKA, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed. 2d 448, and Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. See Clark v. Symonette Shipyards, Ltd., 5 Cir. 1964, 330 F.2d 554.

Under the *Yaka* approach, Garcia could recover only provided that the vessel aboard which he was injured was *in* navigation at the time of the alleged injury. Roper v. United States, 1961, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1; West v. United States, 1959, 361 U.S. 118, 122, 80 S.Ct. 189, 192, 4 L. Ed.2d 161; Drake v. E. I. DuPont de Nemours & Co., 5 Cir. 1970, 432 F.2d 276;

Bodden v. Coordinated Caribbean Transport Inc., 5 Cir. 1966, 369 F.2d 273. Recent amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S.C. Sec. 901 et seq., have foreclosed suits by harbor workers against shipowners based on the theory of unseaworthiness. Pub.L. 92–576, 92d Cong. 2d Sess., 86 Stat. 1251. Under the amendments, harbor workers are now allowed to sue for damages from shipowners only on grounds of negligence.

7. This Court has held that the question whether an individual plaintiff is a seaman is a question of fact for the jury to decide. McKie v. Diamond Marine Co., 5 Cir. 1953, 204 F.2d 132. Since determination of seaman status involves a determination whether the vessel aboard which the individual was injured was in navigation at the time of the injury, Id., this latter question is also one for the jury to decide.

Likewise, this Court has held that the question of damages is properly a question for the jury to decide. Phoenix Indemnity Co. v. Givens, 5 Cir. 1959, 263 F.2d 858, 863.

8. See, e. g., Beacon Theatres, Inc. v. Westover, 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L. Ed.2d 988. In *Beacon Theatres*, the Supreme Court addressed itself to the question whether a trial judge, under the Federal Rules of Civil Procedure, when faced with suits in law and equity involving common questions of fact, and where one party had demanded a jury trial on questions of fact in the suit at law, had discretion to try the equitable claim before the legal claim—and by so doing, invite

findings of fact[9] and conclusions of law [10] made by the district judge as to Fidelity's liability to the appellant under the workmen's compensation policy issued to appellant's employer, The Queen, Ltd.

## INSURANCE COVERAGE

We determine that as a matter of law Part B of the workmen's compensation insurance policy issued by Fidelity to The Queen, Ltd., provided coverage for damages sought under the maritime theories of recovery upon which this suit is predicated: the Jones Act, unseaworthiness, and maintenance and cure. We are guided to this conclusion by several district court decisions in this circuit involving similar policy provisions in similar contexts. Voisin v. Ocean Protein, Inc., E.D.La.1970, 321 F.Supp. 173; Brickley v. Offshore Shipyard, Inc., E.D.La.1967, 270 F.Supp. 985; Keys Engineering Co. v. Boston Insurance Co., S.D.Fla.1961, 192 F.Supp. 574. Brief discussion of the *Brickley* case will be helpful in indicating the reasons for our holding.

The question was squarely presented in *Brickley*, whether a maritime worker, suing under maritime theories might recover damages under Part B of a standard workmen's compensation and employer's liability policy. There, the plaintiff filed suit against his former employer, Offshore Shipyard, Inc., and Offshore's insurer, Fidelity and Casualty Company of New York, the same insurer as in this case. The plaintiff sought damages for injuries sustained aboard a barge operated by Offshore. The plaintiff stated as grounds upon which he sought recovery: (i) the Jones Act, (ii) the warranty of seaworthiness, and (iii) the general maritime law of negligence. The plaintiff further stated that recovery was sought solely under a policy entitled "Workmen's Compensation and Employer's Liability Policy" issued by Fidelity and Casualty. Part B of the policy provided that the insurer was obligated:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease * * * sustained * * * by any employee of the insured arising out of and in the course of his employment by the insured * * *."

270 F.Supp. at 987. In addition, the policy contained a provision which excluded from its coverage injury sustained by " 'a master or member of the crew of any vessel.' " Id.

Fidelity and Casualty argued that coverage under the policy was not afforded for suits brought under maritime theories of recovery. The basis for this argument was Fidelity and Casualty's position that coverage under Part B was impliedly restricted "to accidents to employees and suits by them for damages where the employee sues on a theory grounded in his employee relationship with the insured . . ." Id. Fidelity argued that the suit having been

a situation in which the judgment in the equitable suit, either by *res judicata* or collateral estoppel, would deprive the party demanding a jury trial on the legal issues to his right to such a trial. The Court decided that the trial judge had a "very narrowly limited" discretion in this area, and said further that:

"only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to jury trial of legal issues be lost through prior determination of equitable claims."

Id. at 501–511, 79 S.Ct. at 957, 3 L.Ed.2d at 997–998.

Under the teachings of *Beacon Theatres*, we think the effect of the trial judge's considering and ruling upon the question of liability in a trial by stipulation and order limited to the single issue of insurance coverage, was to deprive appellant of his right to a jury trial on issues of fact.

9. Findings of fact of the district judge numbered 6 & 7.

10. Conclusions of law of the district judge numbered 2 & 3.

brought under maritime theories not grounded in the employment relationship, coverage would not lie.

The court looked to the plain wording of the policy and rejected the attempt to read any such implied restriction into the policy. After reciting the terms of Part B, the court stated:

"Coverage under that wording encompasses any accident sustained by an employee of the insured which arose out of and in the course of his employment. The legal theory under which such an employee might institute suit is totally irrelevant under the terms of the policy. The only requirement for coverage is that the injury be sustained by the employee during his employment. We cannot read the terms of the policy to imply that the legal theory under which a suit may be brought by an employee must "arise out of" the employment relationship."

Noting that Fidelity was arguing the existence of an ambiguity in the policy when in fact there was none, the court ruled first that the construction of a policy of insurance was a matter of law for the court and second that, "were there any real and substantial ambiguity in . . . the policy, that ambiguity would, as a matter of law, have to be construed against the insurance company" under State Mutual Life Assurance Co. v. Dorsey, 5 Cir. 1956, 357 F.2d 600. On this basis the court denied Fidelity's motion for summary judgment on the question of insurance coverage.[11]

■■ We approve and adopt the approach taken by the court in *Brickley*. It is black letter Florida law that:

"If the language of the policy is plain and unambiguous, the words must be

given their commonly accepted meaning. When the meaning of the policy provision is clear and free from doubt, it will be enforced as written and resort will not be made to extrinsic evidence for the purpose of arriving at a proper construction of the language used."

State Liquor Stores v. United Fire Insurance Co., Fla.App.1971, 243 So.2d 228, 230. See Jacksonville Adjustment Bureau v. National Ben Franklin Fire Insurance Co., S.D.Fla.1924, 1 F.2d 800. In the instant case, the language of the insurance policy could scarcely be more definite. The policy states:

"The company . . . agrees * * * to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained . . . by any employee of the insured arising out of and in the course of his employment by the insured * * *."

Here we have (i) an employee of the insured, (ii) who allegedly sustained bodily injuries, (iii) in the course of his employment by the insured. The language of the policy unmistakably obligated the insurer to pay whatever damages might be awarded if the employer is found to be liable. We so hold.

Because the ultimate questions of liability and damages must still be determined, we remand this case to the district court for further proceedings, including a trial by jury on the issues of liability and damages under the insurance policy issued by Fidelity to The Queen, Ltd., unless counsel withdraws the request therefor.

Vacated in part, reversed in part, and remanded to the District Court for further proceedings.

11. The Brickley court noted however that Fidelity might ultimately prevail on the question of insurance coverage if it could show that the plaintiff had been a "master or member of the crew of any vessel" at the time of his alleged injury; for such a showing would have placed the plaintiff within the ambit of the exclusionary provision of the policy and without the scope of coverage. 270 F.Supp. at 987.