Thomas W. GRIFFITH, Libellant,

v.

**WHEELING PITTSBURGH STEEL CORPORATION and American Commercial Lines, Inc., Respondents.**

**Civ. A. No. 73-0706.**

United States District Court,
W. D. Pennsylvania.

Nov. 5, 1974.

Thomas L. Cooper, Pittsburgh, Pa., for libellant.

William S. Lerach, Reed Smith Shaw & McClay, Pittsburgh, Pa., for respondent Wheeling-Pittsburgh Steel Corp.

Giles J. Gaca, John W. Jordan, IV, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for respondent American Commercial Lines, Inc.

## OPINION

TEITELBAUM, District Judge.

This case involves an action for damages brought by plaintiff, Thomas W.

Griffith, against his employer, Wheeling-Pittsburgh Steel Corporation, and against American Commercial Lines, Inc. Plaintiff was injured on May 26, 1973, while working on American's coal barge No. 2730 which, according to Wheeling-Pittsburgh's earlier request, was in the possession and use of Wheeling-Pittsburgh Steel at the time. Plaintiff's complaint alleges that his injury was caused by the negligence of both defendants as well as by the unseaworthy condition of American's barge. Both defendants have filed cross-claims for indemnity. Presently before the Court are 1.) Wheeling-Pittsburgh's motion for summary judgment in its favor as to plaintiff's claims against it and American's claim for indemnity, and 2.) American's motion for summary judgment in its favor as to plaintiff's claims against it and its own claim for indemnity from Wheeling-Pittsburgh.

On February 11, 1973, Griffith began his employment with the Wheeling-Pittsburgh company at its Allenport, Pennsylvania plant. Griffith began work in the common labor pool of the construction department. The nature of his work was such that he would report to the pool each morning and thereafter report to whatever assignment was available that day. During this period, all of Griffith's duties were performed on land. On April 1, 1973, Griffith bid into the hot mill labor pool. As was the case with his work previously, while a member of the hot mill labor pool, Griffith had no permanent duties, but rather was assigned to various jobs on a daily basis.

Including the date of the accident as a full day of work, Griffith worked 74 days for Wheeling-Pittsburgh. Of this time, he was temporarily assigned to work at the company's barge landing with longshoreman-type duties for 3¾ days, specifically, April 23rd for less than a full day, April 27th, April 28th and May 26th, 1973. Thus, of Griffith's work while he was employed by Wheeling-Pittsburgh, 94.6% was exclusively upon the land and only 5.4% of the time

that he was employed by the company was spent in and about the barge landing at the Allenport plant. Of that 5.4% only about one-half of that time was actually spent working on a barge while it was in the water. The rest of the time that he was assigned to the barge landing, Griffith spent working on the railroad cars in the billet yard.

On the day of the accident, Griffith was assigned to work with the barge crew at the landing. Initially, the group with which he was working loaded an open hopper barge with pipe and tubing. Griffith worked inside the hopper of this barge loading this cargo. Then, the first barge was moved and American's barge no. 2730 was placed into loading position. Neither the pipe barge nor American's barge no. 2730 were "navigated" as that term is used in a Jones Act context. After the pipe barge was loaded, the two barges were simply "rounded," or turned around in the water so that the outside barge (no. 2730) was then in the loading position. During the time that the barges were moving, Griffith's sole assistance in the task involved merely throwing ropes from one barge to another.

The accident which is the focus of this case occurred around 2:30 P.M. on May 26, 1973 as the group with which Griffith was working was attempting to pull one of the barge's covers shut. The covers would not move properly and thus a crane was being used to attempt to pull them shut with a cable. Griffith and another man were injured when the cable hook attached to the cover came loose and Griffith and the other man were thrown by its impact into the hold of the barge.

## LEGAL ISSUES INVOLVED

The issues in this case require explanation of the inter-relationship of the Jones Act, the Longshoremen and Harbor Workers' Compensation Act, and the unseaworthiness remedy. The Jones Act, 46 U.S.C. § 688, enacted in 1915, gives "any seaman" the right to "main-

tain an action for damages at law" against his employer for personal injuries suffered in the course of his employment. In 1927 Congress enacted the Longshoremen's and Harbor Workers' Compensation Act (LSHWCA), 33 U.S.C.A. §§ 901–950. The Longshoremen's Act covers all persons "employed in maritime employment . . . upon navigable waters," and establishes such persons' exclusive rights against their employers. 33 U.S.C.A. § 905. The Longshoremen's Act excepts from its provisions only "a master or member of a crew of any vessel." 33 U.S.C. § 903(a); § 902(3).

Since the Jones Act does not define the word "seaman," the interpretation of what persons fall within the Act's coverage has been left to the courts. The decision of the Supreme Court in International Stevedoring Company v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926), expanded the strict construction of the word "seaman" to include shoreside workers and those involved in loading or unloading barges. Since the enactment of the LSHWCA in 1927, however, the courts have consistently held that the benefits of the Jones Act are available only to a member of a crew or vessel, e. g., Swanson v. Marra Brothers, Inc., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946), since a member of a crew or vessel is excluded from the otherwise broad coverage of the Longshoremen's Act.

█ It is said in the *Swanson* case, "We must take it that the effect of these provisions of the Longshoremen's Act is to confine the benefits of the Jones Act to members of the crew of a vessel plying in navigable waters." *Id.* at 7, 66 S.Ct. at 872. Thus, for Griffith to have any rights under the Jones Act, he must be able to prove that he was a seaman, that is, a member of a crew of a vessel when he was injured.

██ On the other hand, it is clear that Griffith is a worker covered by the Longshoremen's Act. The amended act contains the following definition of an employee at 33 U.S.C. § 902(3):

> "The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, ship builder, and ship breaker, *but such term does not include a master or member of a crew of any vessel* . . . ." (emphasis added)

It is also clear that Wheeling-Pittsburgh is an employer under the terms of the Longshoremen's Act. The amended act contains the following definition at 33 U.S.C. § 902(4):

> "The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, . . . or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)."

As the employee of a LSHWCA employer, Griffith has been receiving LSHWCA benefits since the date of his injury.

Under the previous state of the law as exemplified by Seas Shipping Company, Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) and Blair v. United States Steel Corporation, 444 F.2d 1390 (3rd Cir. 1970) cert. denied 404 U.S. 1018, 92 S.Ct. 681, 30 L.Ed.2d 818, plaintiff Griffith could have pursued an unseaworthiness cause of action against the vessel owner (American) and the owner *pro hac vice* of the vessel (Wheeling-Pittsburgh) if he were able to show that he was doing work traditionally done by a seaman at the time of his injury. But, as of this date, the unseaworthiness remedy for longshoremen (those covered by the LSHWCA) has been eliminated by the 1972 amendments to the LSHWCA. The 1972 amendments became effective on November 27, 1972,

well before plaintiff Griffith's accident. The Longshoremen's Act now provides, at 33 U.S.C. § 905(b):

> "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and *the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void . . . the liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness* or a breach thereof at the time the injury occurred." (emphasis added).[1]

■ The first problem then which faces the Court is the question of whether or not Griffith is a "seaman," as that term is used in a Jones Act context. Plaintiff contends that the determination of an individual's Jones Act seaman status is invariably a question for the jury; one which may not be determined by the Court on summary judgment. He bases his contention upon the holdings of the courts in the following cases: South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940); Senko v. LaCrosse Dredging Corporation, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957); Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958); and Mach v. Pennsylvania Railroad Co., 317 F.2d 761

(3rd Cir. 1963). But, in accordance with the opinion of Judge Weis of this Court (now of the Third Circuit Court of Appeals) in Classic v. United States Steel Corporation, C.A. No. 72–277 (W. D.Pa., Dec. 22, 1972) (unpublished opinion),[2] I will hold to the contrary.

The distinction upon which I base my decision was clearly set out by the Supreme Court of the United States in their decision in Senko v. LaCrosse Dredging Co., *supra*, when they said:

> "In South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732, we said that whether or not an employee is a ' "member of a crew" turns on questions of fact' and that, if a finding on this question has evidence to support it, the finding is conclusive . . . . We believe, however, that our decision in South Chicago Coal & Dock Co. v. Bassett, *supra*, has not been fully understood. Our holding there that the determination of whether an injured person was a member of a crew is to be left to the finder of fact meant that juries have the same discretion they have in finding negligence or any other fact. The essence of this discretion is that a jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate."

In other words, as is pointed out in 2 Norris, Law of Seamen, 3rd Ed., 1970 at p. 297:

> "The determination of whether the plaintiff is a seaman under the Jones Act should not be taken from the jury

---

1. As stated in Garcia v. Queen Ltd., 487 F.2d 625 (5th Cir. 1973): "Recent amendments to the [Longshoremen's Act] have foreclosed suits by harbor workers against shipowners based on the theory of unseaworthiness. . . . Under the amendments, harbor workers are now allowed to sue for damages from shipowners only on grounds of negligence." *Id.* at 628, n. 6. And, as is stated in Addison v. Bulk Food Carriers, 489 F.2d 1041 (1st Cir. 1974): "The amendments further provided for increases in workmen's compensation benefits payable to the injured longshoreman by his employer, the stevedore, and for abolition

of the longshoreman's right to seek recovery against the shipowner for unseaworthiness. . . . Thus, the injured longshoreman lost a theory of recovery against the shipowner, previously established in Seas Shipping Co. v. Sierdcki . . . but gained increased benefits from the stevedore." *Id.* at 1042.

2. As Judge Weis stated in *Classic, supra:* "While recognizing that the use of summary judgment is seldom appropriate to determine whether a person is a seaman within the purview of the Jones Act, nevertheless, the uncontroverted facts presented by this case require the procedure to be invoked."

by the trial judge if there is an evidentiary basis for making a finding. When conflicting inferences may be drawn from undisputed underlying facts the determination of whether an individual is a seaman must be made by the fact finder. Only when there is no evidentiary basis to support a jury finding that the plaintiff was a seaman when injured can the court's decision of summary judgment for the defendant be sustained as a matter of law."

The distinction then, which plaintiff has failed to apprehend here, is between those situations in which it is appropriate to leave the "seaman" determination to the court rather than to the jury and those situations in which the determination has been left to the jury and will be left undisturbed. The latter situation, of course, embodies the application of a fundamental principle of appellate review to Federal maritime jurisdiction, no more or less. The former situation by way of contrast, merely sets up a standard to enable the court to determine whether or not to leave a Federal maritime question to the jury. It does not amount to an absolute stricture that the determination of whether or not an injured worker is a Jones Act seaman must *always* be left to the jury. Only when conflicting inferences may be drawn from the underlying facts must the determination of whether an individual is a seaman be left to the jury. When there is no evidentiary evidence whatsoever, as in this case, to support a finding that the plaintiff was a seaman when injured, the court may permissibly rule as a matter of law that the injured party was not a seaman.[3]

The three primary requirements which must be met in order to establish that a person is a member of a crew as that term is used in the Jones Act are: 1.) that the vessel be in navigation upon navigable waters; 2.) that there be a more or less permanent connection with the vessel by the injured party; and 3.) that the worker be aboard primarily to aid in navigation. 2 Norris, Law of Seamen, 3d Ed. 1970, § 659. Here, the vessel upon which Griffith was injured was not in navigation, Griffith had no permanent connection whatsoever with the vessel, and Griffith was not aboard primarily to aid in navigation. Thus, I hold, under the facts of this case, that a worker who is permanently assigned to land-based duties as a member of a steel company labor gang, who is injured on a barge while temporarily working at a river landing, over 95% of whose work activities were upon land, whose contact with barges was infrequent and irregular and who, at the time of his injuries, was not navigating or assisting in navigating the barge, is not a seaman within the meaning of the Jones Act.

## RIGHTS OF THE PARTIES

In summary then, these are the salient features of the parties' legal rights: 1.) Plaintiff Griffith's obvious remedy as to defendant Wheeling-Pittsburgh is the payment of benefits under the LSHWCA. This Court takes notice of the fact that since the date of the accident, plaintiff Griffith has received from Wheeling-Pittsburgh payments under the Act amounting to approximately $120.00 per week; 2.) Because it is found that plaintiff was not a "seaman"

---

3. Plaintiff consistently refers to the Jones Act as a humanitarian statute meant to be liberally construed. He cites such cases as Mach v. Pennsylvania Railroad, *supra*, as examples of this supposedly required liberality of construction. The liberality of construction to which this and other Federal maritime questions were subjected was clearly a reaction to the law as it stood before October of 1972 and thus plaintiff's cita-

tions were inapposite. The 1972 Amendments to the LSHWCA, wherein, in return for increased compensation, injured maritime workers' legal remedies were drastically limited, have clearly altered that pre-existing state of affairs. To hold under these circumstances that the question of whether an injured person was a "seaman" is invariably for the jury would be to emasculate the 1972 Amendments to the LSHWCA.

within the meaning of that term as used in the Jones Act at the time of the accident, plaintiff has no Jones Act remedy against Wheeling-Pittsburgh Steel Company; 3.) Under the express terms of the 1972 amendments to the LSHWCA, as quoted above, plaintiff has no remedy against anyone under the doctrine of unseaworthiness; 4.) Under the express terms of the 1974 amendments to the LSHWCA, as quoted above, American Commercial Lines has no rights of indemnity. versus Wheeling-Pittsburgh. By the same token, of course, Wheeling-Pittsburgh has no right to indemnity against any party to this action, though the point is academic in this context.

The sole question then which remains before the Court is whether or not plaintiff Griffith retains a cause of action for negligence against either American Commercial Lines or Wheeling-Pittsburgh. The most useful material available for providing an insight to this question is the House Report of the Legislative History of the LSHWCA Amendments of 1972 (P.L. 92–576). The House Report from which I quote and the Senate Report, on behalf of the Committee on Labor and Public Welfare, are identical in all important respects. The House Report under the heading ELIMINATION OF UNSEAWORTHINESS REMEDY contains the following analysis of the purpose and impact of the Longshoreman Act Amendments:

"Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fair to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness. This would place vessels in the same position, insofar as third party liability is concerned, as land-based third parties in non-maritime pursuits.

"The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as 'unseaworthiness', 'non-delegable duty', or the like.

"Persons to whom compensation is payable under the Act retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness. Thus a vessel shall not be liable in damages for acts or omissions of stevedores or employees of stevedores subject to this Act, [citations omitted] [or] for the manner or method in which stevedores or employees of stevedores subject to this act perform their work. . ." U.S.Code Cong. & Admin.News, 1972, p. 4703.

After further discussion the House Report goes on to say:

"[T]he Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which precludes the defense of 'assumption of risk' in an action by an injured employee shall also be applicable." U.S.Code Cong. & Admin.News, 1972, p. 4705.

██ Because the Act itself and the Congressional Reports which set out the Act's purpose and background envision the primary situation to which the Act pertains as being one in which an employee of a stevedoring company is injured on a vessel, there is little to be found in either the Act or the legislative history pertaining directly to the precise question here at hand. Clearly though, an employee of a stevedoring company, a

longshoreman in the classic sense, or a workman in the situation in which plaintiff Griffith found himself, who is not a "seaman" within the meaning of the Jones Act, has a cause of action in negligence against the vessel under the 1972 Amendments to the LSHWCA. The vessel in this case is no. 2730, owned by defendant American Commercial Lines, Inc. and plaintiff has a cause of action in negligence against that defendant. 33 U.S.C. § 905(b), as amended. But, it is less clear on the surface whether or not plaintiff has a cause of action against Wheeling-Pittsburgh Steel itself for negligence.

 Because Wheeling-Pittsburgh Steel held exclusive control and possession of barge no. 2730 on the date of plaintiff's injury, its legal status is as owner *pro hac vice* of the vessel. Blair v. United States Steel Corp., *supra*. Plaintiff argues that the owner *pro hac vice*, Wheeling-Pittsburgh, is liable in negligence under the 1972 Amendments to the Act using the following logic: It is clear that persons to whom compensation is payable under the Act retain the right to recover damages for negligence against the vessel, "vessel" being the word used throughout the Act and the legislative history to denote that party against whom a negligence action may be maintained. Plaintiff then quotes from 33 U.S.C. § 902(21), the amended LSHWCA:

> "The term 'vessel' means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, *owner pro hac vice*, agent, operator, charter or bare boat charterer, master, officer, or crew member." [emphasis added]

Plaintiff's argument in sum is that a "vessel" is liable in negligence under the amended LSHWCA, an *owner pro hac vice* is a vessel, Wheeling-Pittsburgh was *owner pro hac vice* of barge no. 2730, therefore, defendant Wheeling-Pittsburgh is liable in negligence to plaintiff Griffith.

However, in attempting to construe a Congressional Act which does not deal in express terms with the inland waterway situation with which this Court is faced, there are contrary implications of even greater force to be drawn. First, it must be noted that the 1972 amendments to the Act unequivocally outlaw actions for negligence against or through stevedores and outlaw indemnification. Here, defendant Wheeling-Pittsburgh was the party providing stevedoring services at the time of the injury to plaintiff. Under the previous state of the law, an action based upon the theory of indemnity and/or an action seeking to hold a party liable for the actions of stevedores would have been the proper means to maintain an action against a party situated as Wheeling-Pittsburgh is here situated. The fact that such previously permissible actions against a party such as Wheeling-Pittsburgh are no longer permissible, can be taken to mean that Congress did not intend to permit a cause of action against an owner *pro hac vice* after the effective date of the 1972 amendments to the LSHWCA.

Second, to hold that plaintiff Griffith has a cause of action against Wheeling-Pittsburgh Steel under these circumstances, would be to allow him to pursue the Jones Act negligence remedy which is clearly unavailable to him since he has been found not to be a "seaman." [4] It seems apparent to me, notwithstanding the material supporting the contrary implication which plaintiff wishes this

4. If it had been found that plaintiff was a "seaman" at the time of his injury, the restrictions of the LSHWCA would not apply to him and he would have had an action for unseaworthiness, an action for maintenance and cure and an action for negligence under the Jones Act against defendant Wheeling-Pittsburgh. Since he is not a "seaman", he has no action for negligence against his employer.

Court to draw, that the manifest congressional intent behind the 1972 amendments to the LSHWCA was to simplify actions of this sort, and to free this area of the law from the confusing and complex body of often antiquated legal reasoning which has been built up around it down through the years.

■ The simple fact is that the LSHWCA is intended to be a Workmen's Compensation Statute for persons engaged in maritime employment and is intended to function as any workmen's compensation statute does—that is, in return for his waiver of the right to sue his employer, the employee becomes beneficiary of a generous, institutionalized system of compensation. Applied to the facts of this case, this means that as to the employer, Wheeling-Pittsburgh, plaintiff has no cause of action for negligence because he is and has been receiving LSHWCA benefits. Even if this were not the unavoidable conclusion before the passage of the 1972 amendments, it must surely be the impartial observers' conclusion afterward.[5] Moreover, the Court takes notice of the fact that since 1928 the LSHWCA has been *the* workmen's compensation statute for the District of Columbia, for non-Federal defense employees and for certain

others who fall under no state's workmen's compensation protection. As stated by the Supreme Court in Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970): "[The LSHWCA grants] to longshoremen the right to receive workmen's compensation benefits from their employers for accidental injury or death arising out of their employment. These benefits are made *exclusive of any other liability for employers who comply with the Act.* The Act does not, however, affect the longshoreman's remedies against persons other than his employer, such as a shipowner. . ." *Id.* at 394, n. 11, 90 S.Ct. at 1784. [emphasis added] See also, Powers v. Bethlehem Steel Corporation, 477 F.2d 643, 648, n. 6 (1st Cir. 1973).

With this clear Congressional intent in mind, I will hold, construing the 1972 amendments to the LSHWCA and the legislative history thereto, that under the facts and circumstances of this case, plaintiff has no cause of action in negligence against defendant, Wheeling-Pittsburgh Steel Company. For the reasons stated above, I will hold that plaintiff Griffith does have a cause of action in negligence against American Commercial Lines, Inc.

An appropriate order in accordance with this opinion shall be entered.

---

5. See, Senate Hearings, Subcommittee on Labor and Public Welfare, 92nd Cong., 2nd Sess. (1972), especially the testimony of Messrs. Scanlan and Martzel at 258–274 and 591–601, respectively. See also, the Opinion of the Three Judge Court in the Eastern District of Pennsylvania on this same issue in Lucas v. "Brinknes" Schiffahrts Ges., 379 F. Supp. 759, 769, E.D.Pa.1974, where it is said: "While leaving to future development the nature of the negligence action against the vessel, we consider it clear that with re-spect to the stevedore the sole liability was that provided under the Act. Congress sought to eliminate all actions against the stevedore whether for indemnity or contribution, whether based on tort or on contract, and whether for fees and expenses. Allowance of any such actions, even a *pro tanto* recovery to the extent of payments made by the employer under the Act, would create the circuitous type action Congress considered was too costly and disruptive of the compensation scheme to be permitted."