[Civ. No. 11082.   Third Dist.   Apr. 12, 1966.]

UNITED STATES STEEL CORPORATION, Plaintiff, Cross-defendant and Appellant, v. TRANSPORT INDEMNITY COMPANY, Defendant, Cross-complainant and Respondent; INSURANCE COMPANY OF NORTH AMERICA, Cross-defendant and Appellant.

Rich, Fuidge, Dawson, Marsh, Tweedy & Morris and Charles C. Dawson, Jr., for Plaintiff, Cross-defendant and Appellant, and for Cross-Defendant and Appellant.

Kroloff, Brown, Belcher & Smart and William B. Boone for Defendant, Cross-complainant and Respondent.

BRAY, J.*—Plaintiff United States Steel Corporation (hereinafter referred to as Steel) appeals from a judgment in favor of defendant Transport Indemnity Company (hereinafter referred to as Transport) on plaintiff's complaint, and together with cross-defendant Insurance Company of North America (hereinafter referred to as INA), from a judgment in favor of Transport on the latter's cross-complaint.

## Questions Presented

1. Was Steel an "additional insured" under the Transport policy?

2. Was Steel "using" the Bigge truck within the meaning of the Transport policy?

3. Was Steel expressly excluded from that policy?

4. Is Transport's policy excess over INA?

## Record

Steel brought this action in declaratory relief against Transport to secure a declaration that a Transport policy issued to Bigge Drayage Company, a corporation, covered

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Steel as an additional insured. Transport in turn by cross-complaint against Steel and INA sought a declaration that INA was the sole insurer covering Steel and that, in any event, Transport's policy was excess insurance over the INA policy. INA admitted coverage except as to $100,000 and claimed that any liability over that amount should be prorated between the two policies. The trial court found that Steel was not covered by the Transport policy. Both INA (which by the court's judgment became sole insurer of Steel) and Steel appealed.

## Facts

The appeal is on the clerk's transcript containing an agreed statement and the insurance policies. Hence, the facts are not in dispute.

The controversy arises out of an accident in which one Stokes, an employee of Bigge Drayage Company acting within the scope of his employment, was injured when the Bigge truck which he was driving went off the road. The truck had been sent to American Bridge Co., a subsidiary of Steel, to pick up steel girders, and to deliver them to a job site in the Feather River Canyon. Steel loaded the truck and Stokes was driving to his destination when he was injured. He sued Steel for his injuries, claiming that Steel improperly placed the load on the truck, causing it to shift, in turn causing the truck to go out of control, whereby he was injured.[1]

At the time of the accident the Transport policy covered Bigge and the truck. Prior to the accident Transport furnished Steel a certificate of insurance showing that Transport, together with Security Mutual, whose policy was included in that of Transport, had issued to Bigge automobile coverage in an overall amount of $10,000,000.

INA's policy insured Steel under a policy for $1,100,000. It contained a provision requiring Steel to pay the first $100,000 of any loss.

Under the terms of the Transport policy the sole insured named in the policy is Bigge. The policy provides that it will pay on behalf of the "insured" all damages and costs on judgments as a result of bodily injuries to persons "caused by" ownership, maintenance or use of owned or nonowned automobiles. Automobile is defined as a land motor vehicle.

---

[1] It was stipulated that Steel had made all demands upon Transport necessary to comply with the provisions of the policy.

The word "insured" is defined in the policy to mean "the named insured," any other person, firm or organization to whom protection has been extended under the policy, and executive officers and directors.

The policy provides that it shall comply with motor vehicle financial responsibility laws and applicable state and federal regulations. As Bigge is a public utility carrier, there is attached to the policy the standard form of endorsement required by the Public Utilities Commission. This provides that the company agrees to pay "any final judgment rendered against *the insured* for bodily injury to or death of any person, or loss of or damage to property of others (excluding injury to or death of the insured's employees . . .), resulting from the operation, maintenance, or use of motor vehicles. . . ." (Italics added.)

There were certain exclusions to the policy which will hereinafter be discussed. The first question to be determined is:

1. *Is Steel an "additional insured"?*

Steel is not a named insured, nor did the policy contain an omnibus clause—a clause insuring all persons using the truck with the permission of the named insured. However, section 415 of the Vehicle Code, now superseded by section 16451, provided, in effect, that an owner's policy of liability insurance shall insure the named insured and any other person using any insured automobile with the express or implied permission of the assured. In *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39 [307 P.2d 359], it was held that "for an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, other than the insured, is driving with the permission and consent of the insured is a violation of the public policy of this state. . . ."

In *Campidonica* v. *Transport Indem. Co.* (1963) 217 Cal. App.2d 403 [31 Cal.Rptr. 735], there was a situation similar to that in the case at bench. There, Bridge, a truck driver acting in the scope of his employment with Miles & Sons Trucking Service, took his employer's truck which was insured by the defendant Transport Company to Permanente Cement to have it loaded with cement. Campidonica, an employee of Permanente, was loading the truck when a heavy metal object fell on Bridge's head, caused by Campidonica's alleged negligence. Bridge sued the latter and Permanente for the injury sustained. Miles & Sons was the named insured in

the Transport policy and there was no provision for any other insured. However, the court held (p. 406) that section 16451 of the Vehicle Code, *supra,* a part of the Financial Responsibility Law, "must be considered a part of every policy of liability insurance even though the policy does not specifically so provide" and that therefore Campidonica and Permanente, being permissive users of the Miles & Sons' truck, were additional insureds under the policy.

In view of the provisions of section 16451 of the Vehicle Code and the rule announced in *Wildman* and *Campidonica, supra,* it must be deemed that Steel was covered by Transport's policy, if at the time of the accident Steel was *using* Bigge's truck.

### 2. *Was Steel "using" the Bigge Truck?*

Steel contends that because it loaded the truck and its girders so loaded were being transported on it, it must be held that Steel was "using" the truck when the accident occurred.

Transport's policy did not expressly cover loading and unloading. In other jurisdictions there is a split of authority upon the question of whether an insurance policy which provides coverage to persons "using" an automobile but does not expressly include "loading and unloading" includes liability for injuries caused in the loading and unloading process. (See 12 Couch on Insurance 2d, § 45 :64, p. 153, et seq.) However, in California it has been uniformly held that in the loading *or unloading* of a truck the negligent party is "using" the truck even though the policy does not expressly include "loading or unloading" and is an additional insured under the policy. (*General Pump Service, Inc.* v. *Travelers Ins. Co.* (1965) 238 Cal.App.2d 81, 87 [47 Cal.Rptr. 533]; *Industrial Indem. Co.* v. *General Ins. Co.* (1962) 210 Cal.App.2d 352, 357 [26 Cal.Rptr. 568]; *Campidonica* v. *Transport Indem. Co., supra,* 217 Cal.App.2d 403; *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 33 [17 Cal.Rptr. 12, 366 P.2d 455].)

Thus, the question to be determined in the case at bench is whether Stokes' injury was the result of "the use," *including the loading,* of the truck within the meaning of those terms in Transport's policy. In determining this question it is important to note the extent of liberality with which the courts have construed the terms "use" or "using" in automobile liability insurance policies.

In *General Pump Service, Inc.* v. *Travelers Ins. Co., supra,* the court held that the insured truck was being "used" by the owner of another truck which was loading a pump motor on the insured truck by means of an "A" frame installed on the other truck. The owner of a crane unloading concrete pipe from an insured truck was held in *Industrial Indem. Co.* v. *General Ins. Co., supra,* at page 357, to be "using" the truck within the liability policy covering the truck.

█ Transport contends that section 16451 of the Vehicle Code, which provided at the time of the accident that an owner's policy of liability insurance shall "Insure the person named therein and *any other person* . . . using any described motor vehicle with the express or implied permission of said assured" and which has been held "as a matter of law, covered permissive users" (see *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142 [23 Cal.Rptr. 592, 373 P.2d 640]), applies only to permissive users who are driving the insured vehicle and not to other users of the vehicle. There is no such restriction in the statute.

Demonstrating further the liberality of the courts in construing the word "use" in automobile liability insurance policies is *National Indem. Co.* v. *Ewing* (1964) 235 Md. 145 [200 A.2d 680]. National insured one Ewing's Oldsmobile. The policy provided coverage for liability for damages for bodily injury "arising out of" the ownership, maintenance or use of the Oldsmobile. Ewing, having spent the evening in a tavern, was driving home with one Bridge riding with him. Ewing's car ran off the road, hit a telegraph pole and ended in a snowbank. Bridge was thrown out of the car before it hit the pole. One Houston came on the scene, saw Bridge sitting in the snowbank and assisted him to arise. Ewing started to lead Bridge back to the Oldsmobile which Ewing had backed onto the road. One George, who had been drinking, drove his car into the two men, injuring Bridge. In an action brought by Bridge against Ewing and George the jury found Ewing negligent in running his car off the road but that Bridge was not injured in that accident; that George was negligent in running into him and that Ewing was guilty of concurrent negligence in the second accident in leading Bridge down the road while Bridge was not mentally accountable for his actions. Saying that "Language in automobile liability policies, identical to that in the case before us, has been construed by the courts of other states, and it has generally been held

that, while the words import and require a showing of causal relationship, recovery is not limited by the strict rules developed in relation to direct and proximate cause'' (p. 682), the court held that the ''negligent use of the car created a situation where Bridge was subjected to the risk of injury'' and brought the case within the coverage of the policy. The court quoted from *Carter* v. *Bergeron* (1960) 102 N.H. 464 [160 A.2d 348, 353, 89 A.L.R.2d 142], where the insured vehicle did not itself produce the injury: '' 'The fact that the insured vehicle was exerting no physical force upon the instrumentality which was the immediate cause of the injury, and was not itself in physical contact . . . is neither decisive of nor fatal to the plaintiff's claim of coverage. . . . It is sufficient that the use was ''connected with the accident or the creation of a condition that caused the accident. . . .'' ' '' (P. 682.)

In *Red Ball Motor Freight* v. *Employers Mut. Liab. Ins. Co.* (5th Cir. 1951) 189 F.2d 374, it was held that the words in a policy ''arising out of the ownership, maintenance, or use'' were not words of narrow and specific limitation but were ''broad, general, and comprehensive terms effecting broad coverage.'' There a truck driver drove up to his employer's gas pump for the purpose of filling the truck's tank. The truck was owned by the employer. After filling the truck's tank, the driver drove away and at the time of the explosion hereinafter mentioned, he and the truck were some 50 miles away. The driver had not properly shut off the connection at the employer's gas tanks, as a result of which gasoline leaked out, flowed down the street and exploded, damaging the plaintiff's property. The policy covering the truck contained a provision that included coverage ''loading and unloading.'' However, the court considered this fact not significant, but held that the truck was being ''used'' in getting the gas and that the policy covered the ''foreseeable consequences of what was done'' in the use of the truck ''whether before, after, or during loading or unloading, so long as the act or thing done by the insured's employee which causes the accident arises out of the use of the insured's car.'' The court then held that the negligent act in the failure to close off the gas tanks was an act of the insured's employee which arose out of his ''use'' of the insured truck.

In *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange* (1961) 190 Cal.App.2d 194, 202 [11 Cal.Rptr. 762], the court said: ''The term 'using' when

used in a policy without restrictive terms, must be understood in its most comprehensive sense. It does not require that the injury be the direct and proximate result in any strict legal sense of the active movement of the motor vehicle covered by the policy.''

In *City of Santa Monica* v. *Royal Indem. Co.* (1958) 157 Cal.App.2d 50 [320 P.2d 136], a tram company, given the concession by the City of Santa Monica to operate trams on condition that the company carry liability insurance to protect the city and its officers and employees, obtained from Royal an automobile liability policy covering injuries to persons ''caused by accident and arising out of the ownership, maintenance or use of the'' trams. Two tram passengers were injured when the wheel of the tram passed over a defective manhole of the city. They sued the city and the tram company. The insurer contended that the injuries to the passengers did not arise out of the ''use'' of the tram but solely out of the defective manhole, and that therefore, the tram company was not covered by the policy. The court, after pointing out that any ambiguity or uncertainty in a policy is to be resolved against the insurer, and that the language of the policy will be understood in its most inclusive sense to give coverage, said (p. 55) ''There is no room for doubt that the accident in question arose out of the use of the automobile [tram].'' It then quoted from *American Auto. Ins. Co.* v. *American Fid. & Cas. Co.*, 106 Cal.App.2d 630, 637 [235 P.2d 645], ''Under defendant's policy it is liable for damages because of injury to property caused by accident and arising out of the *use* of the motor vehicle. Such a policy does not require that the injury be a direct and proximate result, in any strict legal sense of that term, of the use of the motor vehicle covered by the policy.'' The policy was held to apply coverage under the circumstances to both the tram company and the city.

In *McConnell* v. *Underwriters at Lloyds of London* (1961) 56 Cal.2d 637, 640-642 [16 Cal.Rptr. 362, 365 P.2d 418], the court held that language which states that the policy applies to any accident arising out of the ''use'' of a truck included an accident which occurred when a compressor which was negligently attached to the truck came loose on the highway during the towing, resulting in bodily injuries to other motorists.

In *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange, supra,* 190 Cal.App.2d 194 [11

Cal.Rptr. 762], the policy covered all insureds "while using" an owned or hired automobile. Goddard, an employee of Gai Warehouse Company, the insured, drove its truck to Columbia's plant to pick up a load of soda ash. The ash was loaded into the truck by a flexible spout maintained by Columbia and operated by its employee. When the truck was filled Goddard attempted to use a rope attached to the spout to lift the latter out of the truck so that he could leave. The rope was frayed and broke, causing an injury to Goddard. The court held that under the terms of the policy Columbia was covered as it was "using" the truck at the time of the accident; that "it is not necessary that the injury be directly or proximately caused, in the strict legal sense, by the activities of the motor vehicle itself." (P. 202.)

An interesting case is *American Auto. Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543 [19 Cal.Rptr. 558]. Culy Transportation Company, by its driver Guerrero, drove its truck containing four steel blocks, each weighing 400 to 600 pounds, to General Grinding Company's yard. Ordinarily the blocks would have been removed by General by means of a crane but the crane was out of order. Grinding's foreman, Bardon, directed Guerrero to place the truck out in the street so that the blocks could be thrown into some dirt which was a part of the street. (If the blocks were thrown off in the yard the hard pavement would have broken the cement paving and would have dented the blocks.) Bardon directed Rea, another employee of Grinding, to help Guerrero unload and then left the scene. The truck was placed in the street and Guerrero and Rea pushed a block off the truck, striking and injuring a little girl. Pertinent here is the fact that American insured the Culy truck, giving coverage to any person for injuries arising out of the *use* of any automobile, including the loading and unloading thereof. The court held, as an alternative basis for holding that the American policy covered Bardon, that Bardon was "in substance a user of the truck." (P. 551.) "Bardon's liability arises from his own conduct, not from vicarious liability for the acts of Rea whom he assigned to assist Guerrero in the unloading. The parties agree that American would not be liable for Bardon's amenability as respondeat superior. But Bardon's own, or independent, negligence lay in his failure to post a guard to warn persons using the street to watch for the danger." (P. 551.) The court then held that Bardon was responsible for the "particular usage of the Culy truck" and

hence was covered by the policy which insured a person "using the truck." (P. 552.)

In *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455], Simpson Redwood Company hired Hiatt, an independent logger, to log and haul timber. Hiatt hired the truck in question from Waldkirch who supplied the driver, Gudger. Gudger was injured due to the negligence of Hiatt's employees in loading the truck. Simpson's insurer was held liable, resting such liability upon a clause extending coverage to " 'any person while using an automobile . . . hired by' " Simpson if " 'the actual use is with the permission of the named insured' " (Simpson). (P. 32.) The court held that Waldkirch truck to be a "hired automobile" because the hiring by Hiatt was with the "consent" of Simpson, and then held that Simpson's insurer was liable because of the "use" of the truck.

In *Liberty Mutual Ins. Co.* v. *Steenberg Construction Co.* (1955) 225 F.2d 294, a general contractor to whom a subcontractor was making delivery of mixed concrete supervised and signaled from the rear of the truck the course to be taken by the driver in backing the truck to a spot where the general contractor desired to have the concrete dumped. The supervising, signaling and backing operations resulted in injury to a third party. The court held that the participation of the general contractor in directing the backward movement of the truck constituted the contractor, in a sufficient legal sense, as a person " 'using the automobile', or in any event a person 'legally responsible for the use thereof', within the . . . coverage of the . . . policy." (P. 296.)

In *American Fire & Cas. Co.* v. *Allstate Ins. Co.* (1954) 214 F.2d 523, the policy provided coverage for liability arising out of the *use* of a certain jeep. The owner of the jeep was towing it behind an automobile also owned by him when the automobile (not the jeep) collided with a third person's automobile, injuring the third person. The insurer contended that the injuries suffered by the third person did not arise out of the *use* of the jeep since the jeep was an automotive vehicle capable of self-propulsion and was not in use when it was being transported without power of its own in back of the automobile. The court held that the jeep was in *use* under the terms of the policy.

In *Schmidt* v. *Utilities Ins. Co.* (1944) 353 Mo. 213 [182 S.W.2d 181, 154 A.L.R. 1088] a coal company's trucks were

delivering coal to a hospital. In order to put the coal through a hole in the sidewalk which led into the hospital's coal bin, the trucks had to get the backs of the trucks over the hole. The drivers of the trucks placed wooden blocks on the sidewalks and used them as ramps or runways. The coal deliveries had been completed and the trucks driven away. However, the blocks were left on the sidewalk. A pedestrian tripped over them and was injured. The coal company's insurance policy provided coverage for injuries arising out of the ownership, maintenance or *use* of its trucks. The insurer contended that there was no causal connection between the injured person's fall and injuries and the *use* of any of its trucks. The court pointed out that the words "arising out of . . . use" in the policy are broad, general and comprehensive terms and do not require that the use of the automobile shall be the direct and efficient cause of the injuries sustained. The court then said that " 'arising out of' " are ordinarily understood to mean " 'originating from' " or " 'having its origin in,' " " 'growing out of' " or " 'flowing from' " (p. 184), and that the negligent acts of the drivers in leaving the blocks on the sidewalk were not entirely disconnected from and disassociated with the use of the trucks; that the use of the ramp was necessarily incident to the movement and *use* of the trucks.

In *Kemnetz* v. *Galluzzo* (1957) 8 Misc.2d 513 [163 N.Y.S.2d 998], the insured truck was unable to deliver its load (top soil) to the point on the construction job where it was desired. The truck was unloaded on the sidewalk and the truck left the scene. From there the soil was being spread by a payloader operated independently of the truck owner. This payloader backed up sharply, striking a beam at the curb which in turn struck the plaintiff, a passing pedestrian, injuring him. The truck owner's policy provided coverage for the "use" of the truck. The court held that as the payloader was being used to complete the delivery from the truck, the truck was being "used" at the time of the accident, within the meaning of the policy.

In *Hall* v. *United States Fidelity & Guar. Co.* (1957) 107 Ohio App. 13 [155 N.E.2d 462], Hall owned a jeep, which his employee Burley was trying to start. Unable to do so, he was waiting for his employer Hall to start it by towing with the latter's automobile. In backing the automobile to attach a tow line to the jeep, Hall negligently allowed the car to slip backward, injuring Burley. The court held that the jeep was being

"used" at the time of the accident within the meaning of a policy of insurance covering the use of the jeep.

In *Gulf Ins. Co.* v. *Mack Warehouse Corp.* (E.D.Pa. 1962) 212 F.Supp. 39, an employee of a truck owner was injured by a box falling on him, due to the negligence of the loader. The contention was made that as the loading had been completed before the box fell, the loader was not "using" the truck within the meaning of an insurance policy. The court stated that such a narrow construction should not be placed upon the language of the policy. "The policy does not restrict coverage to accidents occurring while the loading operation is being conducted. On the contrary, it expressly covers claims for damages 'arising out of the . . . use [including loading] of the automobile.' " (P. 41.)

The ruling in the cited case is applicable to the case at bench. There, as in the latter case, the injury did not occur during the loading but after loading. The fact that there was a difference in the two cases between the time and place of the injury and those of the unloading is not significant. What is significant is that in *Gulf* the court held that the "use" of the truck continued beyond the mere negligent loading of it.

In *Travelers Ins. Co.* v. *Norwich Union Fire Ins. Co.* (1963) 221 Cal.App.2d 150 [34 Cal.Rptr. 406], the pertinent question was whether Norwich was required to defend East Bay Brass Foundry Co. and one of its employees under the following circumstances. Norwich had issued an automobile insurance policy to one Chlemens which covered him as the named insured and any other person using his automobile with his permission against liability for bodily injury "sustained by any person." The policy included loading and unloading. Chlemens bought a quantity of bronze paperweights from the Foundry. Its employee, contrary to instructions, loaded these into Chlemens' car in cartons which were too large to be lifted by one man. When Chlemens attempted to lift the cartons from his car, he suffered a sprain of his back and shoulders. He sued Foundry and its employee. Norwich claimed it had no duty to indemnify Foundry or its employee or to defend them because the policy should not be held to cover the claims of the named insured arising out of his own injuries. The court held that as the policy undertook to indemnify the additional insured (Foundry, as it was using Chlemens' car with his permission) against bodily injury sustained by *any person*, the fact that Chlemens, the injured person, was the named insured

did not relieve Norwich from liability under the policy. This case, although not directly in point as to the situation in the case at bench, indicates the liberality with which insurance policies must be construed.

Transport cites *Yandle* v. *Hardware Mutual Ins. Co.* (1963) 314 F.2d 435, which held that the welding and machining of a trailer axle which later broke while being hauled on the highway did not constitute "using" the trailer within the terms of a policy providing coverage for a person "using" or being "responsible for the use" of the trailer as the persons doing the work "were not responsible for the use of the vehicle, but only for their defective work." (P. 437.) The facts of that case are so dissimilar from those in our case that its ruling is not applicable here.

■ Having in mind that the rule is that the word "use" in an insurance policy must be given a broad, general and comprehensive meaning effecting broad coverage, that any ambiguity in the policy must be construed against the insurer (*General Pump Service, Inc.* v. *Travelers Ins. Co., supra,* 238 Cal.App.2d 81, 85) and that the policy does not require that the injury be a direct and proximate result in any strict legal sense of the "use" of the automobile, but may arise out of and be related to its use, we hold that Stokes' injury, in the words of the policy, was "caused by" the negligent "use" of the truck in the manner of its negligent loading. The accident arose out of the use of the truck and was a foreseeable consequence of its negligent use. The chain of causation ending in the injury to Stokes arose from the use of the truck.

3. *Exclusions.*

■ Assuming that Steel be deemed to have been "using" the Bigge truck, Transport contends that Steel is excluded from coverage because of the following exclusion in the policy: "This policy does not apply to any liability . . . for bodily injury, sickness, disease or death of *any employee of any Insured* arising out of and in the course of his employment by *any Insured.* . . ." (Italics added.) There are exceptions in the policy to this exclusion but they are not pertinent to this case.

Stokes obviously was not an employee of Steel and his injury did not arise in the course of his employment by Steel. Steel contends that this exclusion applies only to the em-

ployees of the *named* insured and not to those of an additional insured.[2]

The language of the exclusion clause is obviously ambiguous, as said in *Narver* v. *California State Life Ins. Co.* (1930) 211 Cal. 176, 180-181 [294 P. 393, 71 A.L.R. 1374], " 'It is a well-recognized rule of law that if any uncertainties or ambiguities appear in an insurance policy which may be solved by either one of two reasonable constructions, the one which is most favorable to the insured and which will give life, force and effect to the policy should be adopted. The insurance company having prepared the policy and all documents used in connection with its issuance, should not be heard to put such a construction upon an ambiguity, caused by it, as will defeat the policy and take from the beneficiary the very purpose and object of the insurance, if a reasonable construction upholding the insurance can be had that does no violence to the language used and the clear intention of the parties. [Citations.]' " The "presumption favors" the insured *Lagomarsino* v. *San Jose etc. Title Ins. Co.* (1960) 178 Cal.App.2d 455, 464 [3 Cal.Rptr. 80].

A reasonable interpretation or construction of the policy is that the exclusion only applies to employees of the named insured and not to employees of the additional insured. Therefore, applying the above rules of construction we hold that the exclusionary clause does not apply to the employee of the additional insured, Steel, which insured is not seeking coverage under the policy.

Stokes was injured through Steel's negligence and Steel is liable therefor. Transport's policy covered Bigge's permittee, Steel. We can see no good reason why Transport's policy which covers permittees for injuries due to use of the insured Bigge's truck, should not be interpreted to cover Steel as an additional insured simply because Stokes would receive workmen's compensation from his employer, Bigge. Steel was using the Bigge truck with permission of Bigge. Steel gets coverage not because of any employer-employee relationship with Stokes but because Steel is an additional insured under the Bigge policy.

---

[2] " 'Provisions excluding from the coverage of automobile liability policies liability for injury or death of the insured's employees have generally been recognized as a valid attempt to limit the coverage of the policy by excluding therefrom the special hazards incident to the master-servant relationship, coverage for which is usually available through workmen's compensation or employer's liability insurance. . . .' " (12 Couch on Insurance 2d, § 45:544, p. 508.)

### 4. *Transport's policy excess?*

The other insurance clause in Transport's policy states: "If there is other insurance or self-insurance against an occurrence covered by this policy, this insurance shall be deemed excess insurance. . . ." The INA policy states "If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, this insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance."

The INA policy contained a provision that Steel would pay the first $100,000 of any loss. There is an endorsement for the purpose of the Financial Responsibility Law that INA would pay any claim and Steel would in turn reimburse it. Thus, practically speaking, Steel is self-insured for $100,000, but not against third persons. Stokes' complaint sued for $75,000 general damages, plus special damages not spelled out. Thus, we have a situation where the Transport policy states that it shall be excess if there is other insurance or self-insurance. There is $100,000 of self-insurance under the INA policy and there is other insurance above $100,000. On the other hand, the INA policy provides that it is excess over any other insurance. In effect, both policies are excess. Applicable here then is the ruling in *Athey* v. *Netherlands Ins. Co.,* 200 Cal. App.2d 10, 16 [19 Cal.Rptr. 89], where the court said: "In *Cosmopolitan Mut. Ins. Co.* v. *Continental Cas. Co., supra,* 147 A.2d 529, the court discussed many conflicting decisions and then concluded (pp. 533-534): 'The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies and each company is obligated to share in the cost of the settlement and expenses. We think that such a conclusion affords the only rational solution of the present dispute.' "

In the case at bench, the general coverage of each policy will apply only as to any liability over $100,000 for which amount Steel is self-insured.

The judgment is reversed with directions to the trial court to amend its conclusions of law and enter a judgment declar-

ing the relative and respective rights and obligations of the parties to this action in accordance with the views expressed in this opinion.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied May 11, 1966.