**INSURANCE COMPANY OF NORTH AMERICA**

v.

**CONTINENTAL CASUALTY COMPANY.**

Civ. A. No. 74–1955.

United States District Court, E. D. Pennsylvania.

April 27, 1977.

Joseph V. Pinto, White & Williams, Philadelphia, Pa., for plaintiff.

Glenn C. Equi, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for defendant.

MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

I. *Preliminary Statement*

Our task in this case is to allocate insurance liability between two carriers, Continental Casualty Company (Continental) and

the Insurance Company of North America (INA), each of which has insured on the face of its policy the loss incurred in a fatal highway accident. The accident, which took place on June 17, 1971, and resulted in the death of Kenneth Leigh Toney, involved a truck which had been leased by Rebel Truck Rentals, Inc. (Rebel) to Tifton Aluminum Company (Tifton), a subsidiary of the Aluminum Company of America (Alcoa).[1] In the suit brought in this court by the administratrix of the decedent's estate against Tifton, the parties reached a settlement agreement by which $375,000 was to be paid to Toney's widow and children. The settlement which was negotiated by plaintiff's counsel in our chambers, involved the three insurance companies having coverage for the accident. The first $100,000 was paid by Employer's Commercial Union Insurance Company, the primary insurer of Rebel's leased truck, to the limit of its policy coverage. Continental, Rebel's excess insurer, then contributed $150,000. The present dispute centers upon the liability for the remaining $125,000 as between INA, which covers Tifton through a "blanket" policy with Alcoa, and Continental.[2] At the time of the settlement plaintiff's counsel agreed to wait for the unpaid $125,000 pending our determination of the coverage question, and INA and Continental agreed that whichever was ultimately found liable would pay that sum plus interest.

Both the Continental and INA policies contain "other insurance" clauses which purport to subordinate their respective coverage to coverage by any "other" insurers. Because we have found these clauses to be irreconcilable in that the application of one would negate the other, we have treated them as "mutually repugnant," requiring that in the first instance both insurers share liability pro rata, i. e., in proportion to the relative limits of the coverage of each insurer. However, we have also determined that after the *pro rata* apportionment is calculated, INA's liability must be reduced by $50,000, the amount provided in INA's deductible clause. Correspondingly, Continental's liability as excess insurer must be increased by that amount because the $50,000 deductible, when given effect, produces a loss covered by no other insurance.[3] The approach which we have just summarized yields our apportionment of insurance liability between INA and Continental; the following discussion will explain the basis for this approach.

## II. *Discussion*

The clauses which we have found mutually repugnant reflect the now customary practice of insurers to attempt to reserve for themselves a position as insurer of last resort, so to speak, should an insured prove to be covered by some additional insurer(s). The problem is that all insurers are aware of the tactical device and, therefore, the "other insurance" clauses purporting to limit coverage to the excess over all other collectible insurance often appear in all the policies of multiple insurers just as they do

---

1. The fatal accident occurred near Scranton, Pennsylvania, on Interstate Route 81. Tifton's tractor trailer struck Toney as he was pushing his disabled vehicle along the berm of the highway.

2. This case is before us under our diversity jurisdiction. 28 U.S.C. § 1332 (1970). (INA is a Pennsylvania corporation with its principal place of business in Pennsylvania and Continental is an Illinois corporation with its principal place of business in Illinois.) The present action is one for a declaratory judgment under 28 U.S.C. § 2201 (1970). The parties do not dispute the applicability of Pennsylvania law to this case.

3. Paragraph 12 of the complaint, admitted by the defendant, limits the issue before us to the liability for the $125,000 remaining to be paid. This concurs with the Stipulation of Facts, ¶ 8, filed May 5, 1976, and is consistent with our clear recollection of the settlement agreement, which was negotiated under our aegis and by the terms of which only $125,000 of liability was left in question. Thus, to the extent Continental seeks to reopen the liability for the $150,000 which it paid, or to assert that the $150,000 must in some way enter into the calculation of liability for the $125,000 balance, we think it is foreclosed. At the time the settlement was negotiated, Continental agreed (and all parties concurred) that Continental had the second ($150,000) layer of coverage.

in this case.[4] The INA policy provides (in part) in Condition F(1) as follows:

> If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the limit of liability hereunder), the insurance hereunder shall be in excess of, and not contribute with, such other insurance.

The conflicting clause in the Continental policy[5] appears in Condition 10 and states:

> If with respect to loss and ultimate net loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects loss and ultimate net loss; provided, that if the limit of liability of this policy is greater than the limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the limit of liability afforded by this policy.

The arguments of the respective parties relate to the legal significance of these clauses.

■ INA has claimed that Continental's other insurance clause is an "escape clause" and that therefore under the decision in *Grasberger v. Liebert & Obert, Inc.*, 335 Pa. 491, 6 A.2d 925 (1939), Continental alone must pay the $125,000. An escape clause is one which *precludes* liability by an insurer in the event there is other collectible insur-

ance. According to *Grasberger*, because one policy was meant to apply only above other applicable insurance, there could be no (excess) coverage thereunder if the apparent underlying insurer was able to avoid any obligation to provide primary coverage. The court concluded that under the terms of the policy containing the "escape clause" there was indeed no "other insurance" and therefore there could be no escape. *Accord, Jamestown Mutual Insurance Co. v. Erie Insurance Exchange*, 357 F.Supp. 933 (W.D. Pa.1972), *aff'd*, 474 F.2d 1339 (3rd Cir. 1973) (escape clause versus excess clause). In the present case, however, both the INA and Continental other insurance clauses are patently not escape clauses but excess clauses: neither provides for "no liability" in case of other insurance, but rather each seeks simply to subordinate its coverage to that of the other insurer. Thus, even if *Grasberger's* analysis is still the law of Pennsylvania,[6] it is inapplicable to the facts of the instant case.

Because the clauses at issue here are truly mutually repugnant, the respective policies must contribute to the loss; hence we must calculate the ratios which the limits of their respective liabilities bear to the limit of their combined liability and then apply the ratios to the $125,000 at issue here. *See Transport Indemnity Co. v. Home Indemnity Co.*, 535 F.2d 232, 239 (3d Cir. 1976). The single accident limit of INA's coverage is $8,500,000, and the limit of Continental's coverage is $2,000,000. Proration according to these limits renders INA liable for 81% of the $125,000 and Continental liable for 19%. In raw form this would make INA's share $101,250 and Continental's $23,750.

---

4. We note that neither INA nor Continental in the present action can be described as primary insurers even though, as stated in the deposition of Douglas P. Chaloult, an INA officer, the INA blanket policy (*see* 6 Appleman, *Insurance Law & Practice*, § 3912 (1972)) might have provided coverage in the absence of a specific underlying policy as to some insured occurrences. Chaloult Deposition at 27. We will not, therefore, attempt to allocate between the insurers purely on the basis of the kinds of policies involved. Instead, we are of the view that because both policies covered the loss, as will appear, and because their respective other

insurance clauses conflict, a proration is required.

5. Tifton is an insured along with Rebel under the terms of the Continental policy.

6. There have been recent departures. *American Home Assurance Co. v. American Employers' Insurance Co.*, 384 F.Supp. 3, 5 (E.D.Pa. 1974) (Weiner, J.); *see United States Fidelity & Guaranty Co. v. Liberty Mutual Insurance Co.*, 327 F.Supp. 462 (M.D.Pa.1971) (Sheridan, J.); *Donegal Mutual Insurance Co. v. Transamerica Insurance Co.*, 62 Pa.D. & C.2d 374 (1973).

We must now consider the treatment to be given the $50,000 deductible provision which appears only in the INA policy. We point out in this regard that the purpose of proration in accordance with the limits of liability of irreconcilable policies is to balance liability between insurers in some proportion to the relative risks for which each insurer contracted. A policy which contains a large deductible clause obviously assumes less economic risk than the same policy without a deductible and that fact should not be overlooked in making a final allocation of liability. It is our view, therefore, that the INA deductible should be given effect after the proration has been calculated. By so doing, the obligation of INA in this case is reduced by $50,000 from $101,250 to $51,250. Concomitantly, the $50,000 deduction must be added to Continental's liability as within the terms of its excess coverage, increasing its liability from $23,750 to $73,750.

We are mindful of our obligation, as we make this determination, to provide a liberal interpretation of the respective policies *favoring* coverage of the insured. *See, e. g., Hensley v. Life Insurance Company of North America,* 551 F.2d 35 (3d Cir., 1977); *Pittsburgh Bridge & Iron Works v. Liberty Mutual Co.,* 444 F.2d 1286 (3d Cir. 1971). It would be untoward indeed if a party who appeared to be doubly insured, and who was not represented in a declaratory action between insurers, should suddenly be left uninsured in a substantial amount. We believe that our present construction comports with the terms of the Continental policy and the economic realities of the situation: once INA is relieved of liability to the extent of its $50,000 deductible, there is simply no other coverage, and Continental's excess coverage must take effect.

In *Pacific Power & Light Co. v. Transport Indemnity Co.,* 460 F.2d 959 (9th Cir. 1972), a case raising issues similar to those raised in this case, the court in prorating liability between insurers with conflicting other insurance clauses declined to alter the proration, which was based purely upon liability limits, even though one policy contained a deductible provision. The court thus left the issue of the rights and obligations arising from the deductible provision to be decided between the insured and the insurer who bargained for that provision. *Id.* at 962 & n. 5. Our rationale in excluding the deductible amount from our proration calculations is in accord with that of *Pacific Power,* for we do not believe that the insurer who has not provided for any deductible clause should share the benefit of it.[7] We depart from *Pacific Power's* treatment, however, by declaring that the deductible amount is to be given effect in reducing INA's prorated liability and that such amount is further to be considered as liability in excess of that covered by other insurance and hence to be assumed by Continental as part of its "excess" liability. By the approach taken in *Pacific Power,* the deductible amount would in effect be subtracted from the prorated share owing by the insurer exercising its deductible privilege; this would often leave an insured, who as in the instant case may not be a party to the action, with a sudden gap in coverage and the burden of bringing an independent suit against an excess insurer whose liability has already been adjudicated. It is this unsatisfactory result which we seek to avoid by resolving at one time the whole question of the insurers' liability to the insured (the deductible question included), and by giving the insured the appropriate benefit of a liberal interpretation, *see Hensley* and *Pittsburgh Bridge, supra,*

---

7. *Pacific Power* criticized the decision in *United States Steel Corp. v. Transport Indemnity Co.,* 241 Cal.App.2d 461, 50 Cal.Rptr. 576 (1966), by which the two insurance carriers with conflicting "other insurance" excess clauses were able to subtract from the amount of their collective liability an amount which was deductible from the coverage of only one of the carriers. This in effect gave both carriers the benefit of the deductible provision in one, to the obvious exasperation of the insured. We think that *Pacific Power's* criticism of *United States Steel Corp.* is correct; however, as appears in the text, we disagree with the court's refusal in *Pacific Power* to recognize the operation of the deductible provision.

of the excess insurance clause in the Continental policy.

■ In conclusion, for all the foregoing reasons, INA's liability is determined to be $51,250 and Continental's is $73,750, interest to be divided accordingly.[8] An appropriate order follows.

---

8. The plaintiff has asserted that in a letter dated October 8, 1968, from William C. Morris, President of Rebel Truck Rentals, to Mr. Carol Ray at Tifton Aluminum Company, Inc., Rebel stated that it would undertake a $1,000,000 blanket liability coverage. Plaintiff's argument appears to be that such a letter evidences the intent of the insured parties that Rebel would obtain primary coverage. However, we believe the letter, even if it were accepted at face value, does not alter our analysis of the application of two mutually repugnant policies because the letter does not represent a contractual obligation binding on the insurers who were not parties to that asserted agreement. *Transport Indemnity Co. v. Home Indemnity Co.*, 535 F.2d 232, 235 (3d Cir. 1976).