[Civ. No. 30260. Fourth Dist., Div. Three. June 10, 1983.]

NABISCO, INC., Cross-complainant and Appellant, v.
TRANSPORT INDEMNITY COMPANY, Cross-defendant and Respondent.

**COUNSEL**

Kinkle, Rodiger & Spriggs and Michael J. Logan for Cross-complainant and Appellant.

Cotkin, Collins, Kolts & Franscell, Raphael Cotkin, Larry W. Mitchell and Georgette Renata Herget for Cross-defendant and Respondent.

**OPINION**

**CROSBY, J.**—In this insurance coverage dispute, the superior court found a Transport Indemnity Company (Transport) policy to be excess and hence no duty by Transport to defend or indemnify Nabisco Company (Nabisco) in an underlying personal injury action.

The facts are essentially undisputed. James J. Berry, a Trans-Con Lines truck driver, sued Nabisco for personal injuries sustained while loading his employer's vehicle at a Nabisco facility. On the date of the accident, Nabisco was the named insured under Home Insurance Company's (Home) umbrella excess policy number HEC-4764111, which provided coverage for losses in excess of $50,000 up to $5 million.[1] Nabisco was responsible for the first $50,000 of any loss. Although it could have purchased coverage for the Home deductible, Nabisco processed all liability claims under the retained limit of $50,000 "in house" because it was more cost-effective. The Nabisco attorney who supervised this department testified the Berry lawsuit was treated as a "self-insured" or "uninsured" claim to which the company's self-insured retention of $50,000 applied.

Trans-Con was the named insured under two Transport insurance policies. Number 00251 provided primary automobile liability coverage up to $50,000 per occurrence, and number 00251-X provided excess coverage of $9.95 million per occurrence. The primary Transport policy contained an "other insurance" clause which deemed its coverage excess if "there is other insurance or self-insurance."

Nabisco, claiming the status of additional insured under the primary Transport policy, tendered its defense in the Berry Action to Transport. Transport refused the tender based on Nabisco's self-insurance and the Home umbrella coverage.[2] Nabisco eventually settled with Berry for $150,000. Home contributed $100,000; Nabisco paid the remainder and incurred more than $20,000 in defense expenses. Nabisco sued for reimbursement of its defense costs, settlement contribution, and punitive damages, based on Transport's alleged bad faith refusal to accept its tender of defense.

---

[1] The $50,000 retained limits applied to claims "arising in U.S. *territories and possessions* . . . ." Nabisco apparently concedes the applicability of this provision to accidents occurring in the United States itself.

[2] The trial court correctly found that, as between the Home and Transport policies, *both* Transport policies were excess. (Ins. Code, § 11580.9, subd. (c).) Home does not appeal.

### ■ *The Transport Primary Policy Is Expressly Excess Where There Is "Other Insurance or Self-insurance."*

Nabisco urges us to disregard express language in the Transport policy, which deems its coverage excess where there is other insurance or self-insurance. Nabisco contends the term "self-insurance" as used in the Transport policy is not specifically defined and argues this creates an ambiguity which should be resolved in favor of primary coverage, including defense expenses. Not so. ■ Courts generally enforce excess coverage provisions, particularly where there is no reasonable expectation of primary coverage and the rights of insureds and accident victims are unaffected by its application. (*National American Ins. Co.* v. *Insurance Co. of North America* (1977) 74 Cal.App.3d 565, 574 [140 Cal.Rptr. 828].) General principles of equity and express language in the Transport and Home policies militate against the result urged by Nabisco.

■ Nabisco does not claim it is confused by the concept of self-insurance; nor could it reasonably do so, since its arrangement with Home was deliberately designed to provide self-insurance for the amount of the Home deductible. The Home policy does not define self-insurance, and Nabisco apparently understands its terms. In fact, in its argument for primary coverage by Transport, Nabisco relies on the very portion of the Home policy purporting to exclude defense expenses where self-insurance is involved.[3] The evidence is overwhelming that Nabisco was conversant with the concept of self-insurance and was in fact self-insured for the first $50,000 of any loss.[4] (See *United States Steel Corp.* v. *Transport Indem. Co.* (1966) 241 Cal.App.2d 461, 475 [50 Cal.Rptr. 576], interpreting the same policy language under remarkably similar facts; and *Lovy* v. *State Farm Insurance Co.* (1981) 117 Cal.App.3d 834, 859 [173 Cal.Rptr. 307], where the court interpreted the term "retained limit" in an umbrella policy similar to Home's as meaning a form of self-insurance.)

Nabisco's resort to hypothetical hyperbole (the "mom and pop" grocery store argument) to conjure up an ambiguity in the Transport policy similarly fails. ■ Ambiguity in an insurance policy, if it exists, must be found in the circumstances of the particular case; it may not be created in the abstract. (*VTN*

---

[3]The Home policy provides, "In the event of the exhaustion of valid and collectible primary insurance available to the Insured by reason of any occurrence, the Company shall be obligated to assume charge of the settlement or defense . . . but only where the insurance afforded by this policy applies immediately in excess of such primary insurance, without the intervention of any self-insurance . . . ."

[4]Nabisco personnel admitted the firm was self-insured for the first $50,000 of loss, and declarations by Nabisco's attorney referred to the company as self-insured.

*Consolidated, Inc.* v. *Northbrook Ins. Co.* (1979) 92 Cal.App.3d 888, 892 [155 Cal.Rptr. 172].)

■ In construing the language of insurance policies, words are given their popular and ordinary meaning. (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278].) ■ We recognize the term "self-insurance," while perhaps a misnomer, is nevertheless a common and accepted concept in risk management today. (*Lovy* v. *State Farm Insurance Co.*, *supra*, 117 Cal.App.3d 834; *Metro U.S. Services, Inc.* v. *City of Los Angeles* (1979) 96 Cal.App.3d 678, 683 [158 Cal.Rptr. 207]; and Barrett, Attorney's Guide to Insurance & Risk Management (1978) Self Insurance, p. 481.) As used in the Transport policy the term "self-insurance" is not ambiguous. Consequently, Transport's coverage is excess over both Nabisco's $50,000 of self-insurance and Home's $5 million umbrella policy.

### As an Excess Insurer Transport Did Not Owe Nabisco the Duty of Defense or Indemnity

■ Generally, an excess insurer has no duty to participate in the insured's defense or contribute to a settlement on its behalf until primary coverages are exhausted. (*Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 367 [165 Cal.Rptr. 799, 612 P.2d 889]; *Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 601 [178 Cal.Rptr. 908].) Even where an excess carrier's defense and indemnity obligations do arise, the primary insurer remains responsible for defense expenses attributable to its coverage. (*Aetna Cas. & Surety Co.* v. *Certain Underwriters* (1976) 56 Cal.App.3d 791, 806 [129 Cal.Rptr. 47].) A self-insurer is likewise responsible for the defense costs attributable to the extent of its self-insured retention. (*United States Steel Corp.* v. *Transport Indem. Co.*, *supra*, 241 Cal.App.2d 461, 475.) ■ Transport owes no duty to defend under these circumstances until it appears damages will exceed $5 million.

Nevertheless, relying on the maxim that the duty to defend is broader than the duty to indemnify (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]), Nabisco seeks reimbursement for all defense expenses. It argues it is uninsured for the first $50,000 and the Transport policy, even if excess as to Nabisco, is the only one which includes a duty to defend. Nabisco is wrong. It was not uninsured; it was self-insured. (*United States Steel Corp.* v. *Transport Indem. Co.*, *supra*, 241 Cal.App.2d 461, 475.) Unlike the plaintiff in *Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d 263, Nabisco cannot seriously claim it had a reasonable expectation of general coverage under the Transport policy. It made a risk management decision not to buy coverage for the first $50,000. To rewrite the Transport policy to require it to defend under these circumstances would only create a serendi-

pitous windfall for Nabisco.[5] (*National American Ins. Co. v. Insurance Co. of North America, supra,* 74 Cal.App.3d 565, 577.)

Nabisco raised one final hypothetical situation at oral argument which merits mention because of its novelty. It is suggested that without the Home policy Nabisco would have no defined upper limit of self-insurance and Transport's coverage would necessarily apply at the outset. This is just another way of arguing that an entity with unlimited self-insurance should be treated as uninsured. As this is not the issue before us, we need not formulate a rule to answer it. Cases dealing with an excess insurer's duty to contribute to, or even assume, its insured's defense (see *Signal Companies, Inc. v. Harbor Ins. Co., supra,* 27 Cal.3d 359 and *Aetna Cas. & Surety Co. v. Certain Underwriters, supra,* 56 Cal.App.3d 791) have emphasized the reasonable expectation of each carrier and determined the respective obligations of each based on principles of equity. We presume a similar analysis will be undertaken if the circumstances suggested by Nabisco become the subject of a justiciable dispute.

Judgment affirmed.

Trotter, P. J., and Sonenshine, J., concurred.

---

[5]And contrary to Nabisco's assertions, the Home policy does provide a duty of defense. See footnote three *ante.* Even without these provisions, the duty of an excess carrier to defend is implied, provided the policy does not expressly exclude it. (*Aetna Cas. & Surety Co. v. Certain Underwriters, supra,* 56 Cal.App.3d 791.)