[No. F019210. Fifth Dist. Mar. 6, 1995.]

DELFINO MARTINEZ et al., Plaintiffs and Appellants, v.
STATE COMPENSATION INSURANCE FUND, Defendant and
Respondent.

COUNSEL

Ralph C. Smith for Plaintiffs and Appellants.

Capps, Staples, Ward, Hastings & Dodson, Kenneth C. Ward and John Hollingshead for Defendant and Respondent.

OPINION

VARTABEDIAN, J.—Appellants are (a) injured employees and (b) survivors of other employees killed in an employment-related van accident. They are assignees of the employer's interest under a liability provision contained in an insurance policy issued by respondent, State Compensation Insurance Fund. As such, appellants sued respondent insurer for declaratory relief and damages arising from respondent's denial of coverage under the policy. Appellants now appeal from a judgment in favor of respondent. The issues are coverage and duty to defend. We affirm.

### FACTS AND PROCEDURAL HISTORY

Employee appellants and decedents of the other appellants (collectively, the employees) were farm labor employees of San Joaquin Harvesting, Inc. (SJH). SJH was a farm labor contractor and was subject to the requirements of the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 United States Code section 1801 et seq.

On June 25, 1985, the employees were being transported from one work site to another in a van owned and operated by another employee who was being paid by SJH to transport the workers. The van was involved in a multiple vehicle accident. Three employees were killed, one was rendered quadriplegic, and four others were seriously injured.

At the time of the accident, SJH was the insured under a general liability insurance policy issued by Mission Insurance Company and a "Workers' Compensation & Employer's Liability Insurance Policy" (hereafter the policy) issued by respondent. Respondent paid workers' compensation claims under the policy in an amount of approximately $1.4 million.

Appellants sued the driver of the van and the agricultural enterprise with whom SJH had contracted to provide labor on the day of the accident. Subsequently, the United States Supreme Court decided *Adams Fruit Co.* v. *Barrett* (1990) 494 U.S. 638 [108 L.Ed.2d 585, 110 S.Ct. 1384]. *Adams* held

that the exclusivity provisions of state workers' compensation laws were preempted by the private right of action created by AWPA. Accordingly, appellants added SJH as a defendant in the suit against the driver and the agricultural enterprise, asserting an AWPA cause of action. Respondent refused coverage and refused to provide counsel for SJH. Mission Insurance, which had become insolvent, provided counsel (through the California Insurance Guarantee Association) for SJH under the general liability insurance policy.

The action was eventually settled as to SJH for $2.5 million. In return for a covenant not to execute on the judgment, SJH assigned to appellants all of its interests as insured under the insurance policy issued by respondent.

On May 24, 1991, appellants filed a complaint against respondent seeking declaratory relief and damages. They contended part two of the policy, that is, the employer's liability section, provided coverage for the AWPA damages action. They sought a declaration that respondent had breached the contract of insurance and had engaged in bad faith in refusing coverage. They also sought damages resulting from respondent's actions.

The matter was tried to the court without a jury. In a detailed, eight-page judgment, the court determined that AWPA liability was not covered by part two of the policy, since that part of the policy, by its express terms, only covered liability "which arises under the laws of the State of California."

DISCUSSION

The relevant portions of the policy provide:

"PART TWO - EMPLOYER'S LIABILITY INSURANCE

"A.   HOW THIS INSURANCE APPLIES

"This employer's liability insurance applies to bodily injury by accident . . . , including resulting death, subject to the following conditions:

"1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

"2. The employment must be necessary or incidental to your work in the State of California.

"3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"5. If you are sued, the suit and any related legal actions for damages for bodily injury . . . *must be brought under the laws of the State of California.*" (Italics added.)

■ Appellants contend that, interpreted appropriately, paragraph 5 includes liability under AWPA, a federal statute. In the alternative, they claim the issue of coverage was uncertain enough to at least require respondent to defend the underlying action on behalf of SJH.

Appellants rely principally on two well-established rules of construction. First, as phrased by Witkin, "Any ambiguity or uncertainty in the policy will be construed against the insurer in order to achieve the object of coverage for the losses to which the policy relates." (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 699, p. 632.) Second, exclusions from coverage "must be plain, clear and conspicuous; if they fail to meet this test, they will be interpreted narrowly, and all ambiguities will be resolved against the insurer." (*Id.* at § 700, p. 634.)

Appellants argue the language of paragraph 5 may apply to the claim of a worker injured in another state while working for a California employer, and that the manner in which the language may apply is ambiguous. (See par. II(A)(2), quoted above.) They also posit the language of paragraph 5 may mean that the liability must arise from an action pending in the California courts. They then conclude that, given these confusing and ambiguous applications of paragraph 5, an employer would have no warning that the language instead operates to exclude liability arising under a federal statute.

■ The question of ambiguity in an insurance contract addresses the circumstances of the present case, not a hypothetical uncertainty wholly removed from the facts of the case. (*Blumberg* v. *Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286, 1296 [238 Cal.Rptr. 36]; *Nabisco, Inc.* v. *Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, 835 [192 Cal.Rptr. 207]; see generally, *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048].) ■ The undisputed facts of the present case are at the exact, unambiguous core of the language of paragraph 5. Accordingly, it avails appellants nothing that there may or may not be more peripheral circumstances in which liability under the policy would be problematical.[1] The provision that the action "must be brought under the laws of the State of California" unambiguously excludes a cause of action arising directly under AWPA.

---

[1] We do not mean to imply that appellants' hypotheticals in fact establish ambiguity as to the facts they posit. We do not reach that question. Instead, we merely conclude the answer to that question is irrelevant where the facts before us do not present any ambiguity.

Appellants do not really ask that we *construe* the relevant phrase in paragraph 5; rather, they effectively ask that we *ignore* the language. Thus, they seek a result similar to that in *Garcia* v. *Queen, Ltd.* (5th Cir. 1973) 487 F.2d 625. In that case, the employer's liability portion of the workers' compensation policy provided the insurer would pay " 'all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident . . . sustained . . . by any employee of the insured arising out of and in the course of his employment by the insured . . . .' " Based on this unlimited coverage language, the court held that the policy provided coverage under the federal Jones Act (46 U.S.C. § 688), as well as under various maritime theories of recovery. (487 F.2d at p. 629.) It would strip the present insurance policy of its plain meaning if we were to interpret the limited language of paragraph 5 in the same manner the *Garcia* court interpreted the unrestricted language of the policy before it.

Nevertheless, appellants assert that we should find ambiguity in the language of paragraph 5 because interpretation of the language to exclude liability under federal law would violate public policy set forth in the workers' compensation law. In particular, they argue that the statutory definition of " '[e]mployer's liability insurance incidental [to a workers' compensation policy] and written in connection therewith' " (Ins. Code, § 11750.1, subd. (f)) indicates that such insurance should cover "any" liability of the employer, since it defines that phrase to mean "insurance of any liability of employers for injuries to, or death of, employees . . . ," without any restriction of coverage under federal law. This argument, however, ignores that "any" liability is then broken down in Insurance Code sections 11779 and 11780 into two different kinds of liability:

"The fund may insure California employers against their liability for compensation or damages for injury or death under the United States Long-shoremen's and Harbor Workers' Compensation Act, or other federal or maritime laws, as fully as any private insurer." (Ins. Code, § 11779.)

"The fund may also insure an employer against his or her liability for damages under the laws of the State of California arising out of bodily injury to or death of the employer's employees occurring within the State of California if the fund also issues workers' compensation insurance to the employer as to his or her employees." (Ins. Code, § 11780.)

Thus, far from creating an ambiguity in paragraph 5 of the insurance policy, the statutory language reinforces the plain and obvious meaning of that language: liability "under the laws of the State of California" does not encompass liability under "federal or maritime laws." (See *Producers Dairy*

*Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 914 [226 Cal.Rptr. 558, 718 P.2d 920].)

Appellants claim an employer who purchases an employer's liability insurance policy would expect to be covered for liability for employee injury arising from any source. Because all Californians are subject to the laws of the United States as a matter of constitutional law, argue appellants, employers would reasonably expect that federal liability would be covered by the policy. In the absence of ambiguity in the policy, however, the employer's subjective "expectations" are irrelevant to the coverage issue; the intentions of the parties to the insurance contract are to be ascertained from the language of the policy itself. (Civ. Code, § 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"].)

Additionally, appellants contend that paragraph 5 is insufficiently clear and unmistakable to operate as an exclusion from coverage, and should therefore be construed to favor the insured. They say the exclusion of coverage, to be adequately clear and conspicuous, must be stated in terms of its effect.

Courts have long recognized that there is a difference in the language required to describe coverage, on the one hand, and language limiting the basic coverage of a policy, on the other. (See Keeton & Widiss, Insurance Law (1988) The Risks Transferred, § 5.2(a) pp. 467-469.) Thus, where an insurer has undertaken in broad language to insure against a class of risk, " ' "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect" [citation]; thus "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." ' " (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764].)

In the present case, however, the operative language is part of the "basic underlying obligation" itself. It is not hidden away in the back of the policy, nor is it otherwise designed to elude all but the most diligent policyholders. Rather, one who sought the nature of his or her coverage under the policy would be hard-pressed to miss this language. Accordingly, we measure the language of paragraph 5 by the ordinary standard of ambiguity, rather than the more elevated standards applied to exclusionary language. (See *Dyer* v. *Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1547 [259 Cal.Rptr. 298] ["Where the scope of basic coverage creates no potential

liability under the policy, the courts may not use a strained construction to impose a liability upon an insurer that it has not assumed"].)[2]

Appellants contend, in the alternative, that AWPA has been incorporated into California law by various references to it in the Labor Code (see Lab. Code, §§ 1684, 1690, 1695.5; see also § 1697), and that an AWPA civil damages suit is, therefore, "brought under the laws of the State of California." However, to the extent a provision such as Labor Code section 1697, subdivision (b) creates a cause of action for violation of AWPA, the workers' compensation exclusive-remedy provision would bar the state law action, even though the federal action is not preempted. (See Lab. Code, § 3602, subd. (a).) We conclude that the AWPA private right of action is not "brought under the laws of the State of California," as provided in paragraph 5 of the policy.

Finally, appellants make the wholly unconvincing argument that we should construe paragraph 5 of the policy to include AWPA liability because, "[a]s anyone familiar with legislation knows, legislation calling for compensatory/actual damages, is specifically meant to be covered by insurance." Congress, however, knew full well how to require insurance for AWPA liability when it intended to do so. Thus, 29 United States Code section 1841(b)(1)(C) requires that farm labor contractors have automobile liability insurance, but 29 United States Code section 1841(c) provides that coverage of employees under a workers' compensation policy satisfies this obligation. (*Adams Fruit Co.* v. *Barrett, supra,* 494 U.S. at p. 643 [108 L.Ed.2d at pp. 594-595].)

Congress has not required agricultural employers to carry motor vehicle insurance beyond coverage provided by workers' compensation laws, nor has it required insurance for general AWPA civil liability. Furthermore, regardless whether SJH was required to have AWPA liability insurance, the question in the present case is whether *this* policy provides that insurance.

---

[2]Appellants also argue that respondent had a duty to defend SJH in the underlying action since "the potential for liability existed because the policy did not clearly and conspicuously exclude coverage for federal law which reasonably led SJH to an expectation that [respondent] would provide it with a defense in the underlying action as the injuries sustained by its employees are within the nature and kind covered by the policy." (See *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 272 [54 Cal.Rptr. 104, 419 P.2d 168].) As we have seen, however, there was no potential for liability under the policy for damages arising under federal statutory law. (See *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co., supra,* 9 Cal.4th at p. 39.) The language of the policy is clear and explicit that only claims under the laws of the State of California were covered by the policy. Where there is no potential for liability under the policy, there is no duty to defend. (*Fire Ins. Exchange* v. *Jiminez* (1986) 184 Cal.App.3d 437, 440-442 [229 Cal.Rptr. 83]; *Dillon* v. *Hartford Acc. & Indem. Co.* (1974) 38 Cal.App.3d 335, 339-345 [113 Cal.Rptr. 396].)

Even if SJH failed in a statutory duty to provide insurance (of which failure, of course, there is no evidence), such failure could not result in a modification of respondent's contractual obligations with SJH.

We thus conclude that the unambiguous coverage language in paragraph 5 of the policy precludes coverage under the policy for a federal statutory cause of action.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

Martin, Acting P. J., and Dibiaso, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 28, 1995.